### Ex Parte Thomas Tinsley.

*No. 1227.   Decided April 14th, 1897.*

**1.   Contempt—Habeas Corpus as a Remedy Against Judgment For**

Where a court has jurisdiction over the subject matter, although its judgment may be erroneous, it is not void, and the case cannot be reviewed on habeas corpus; but, where the court is without jurisdiction of the subject matter or the parties, or lacks power to make the order in the particular case, it cannot punish for contempt or disobedience of such order, and habeas corpus is a remedy against the infliction of such punishment.

**2.   Same—Judgment—Validity of, Where Judge is Related to Parties.**

The judgment of a court, appointing a receiver for a corporation, is not null and void because some of the stockholders of the corporation were related to the judge making the appointment of the receiver. Following, Cemetery Company v. Drew — (Tex. Civ. App.), 36 S. W. Rep., 802.

**3.   Same—Ordering Property Turned Over to a Receiver—Practice.**

Where a court has acquired jurisdiction over the property of an insolvent corporation, and of a defendant claiming said property, or a part thereof, its order, that such defendant assign and turn over the property claimed by him to the receiver, must be obeyed, however erroneous it may be. If the order is void in part, the remedy of defendant, is to apply for a modification of the order; and, if he fails to pursue this remedy and fails to obey the order, he may be committed for a contempt of court. And, on appeal from such order committing him to jail for such contempt, no error in the prior order, requiring him to assign and turn over the property, can be considered. The only question, as to such prior order, which can be considered, is, whether the court had jurisdiction to make it: and in a habeas corpus proceeding involving such matters, only jurisdictional questions will be inquired into.

**4.   Same.**

On an application for habeas corpus, for relief in an adjudged contempt for failure of applicant to turn over property to a receiver in obedience to an order of the court, where it appeared that applicant, as an officer of the incorporated company, through direction of some of the stockholders, had obtained the transfer of said property to himself as an individual. Held: The court had jurisdiction to make an order, the effect of which was merely to place this property so held by him, together with all the property of the corporation, in the hands of a receiver for administration under the orders of the court.

**5.   Same.**

Where the order of a court, directing a defendant to turn over to a receiver certain property in his possession, has been disobeyed, and he has been adjudged in contempt therefor, if it be conceded that the order was only in part valid and partly in-

valid as to some of the property on application for relief by habeas corpus, it would be his duty to show, that he had done all within his power to comply with that portion of the order which the court unquestionably had the right to make.

### 6. Contempt—Punishment.

For failure to obey the orders of the court to turn over certain property where the court, in punishment for the contempt, only fined the relator $100, and ordered him into custody until he complied with its orders, but imposed no imprisonment as part of the penalty, and relator claimed that the order would cause his imprisonment beyond the three days authorized by statute. Held: Such objection was not tenable, because the going to jail would be a self-imposed punishment which relator could avoid by paying the fine, which the court had authority to impose.

FROM Harris County.

Original application to the Court of Criminal Appeals for a writ of habeas corpus for relief against a fine for contempt in disobeying an order of court to turn over property to a receiver.

The District Court of Harris County in a suit to which the Houston Cemetery Company, a corporation for purposes of sepulture, Thomas Tinsley and others were parties as defendants, after due notice to and appearance by the defendants, made an order appointing William Christian its receiver for all the property of the cemetery company, and directing the company's officers, of whom Tinsley was one, to deliver over to the receiver, on his demand therefor, the company's property in their custody, including its books,.notes, and moneys on hand. This interlocutory decree was affirmed on appeal by the Court of Civil Appeals for the First District. 36 S. W. Rep., 802. The receiver, having capacity to act under the law, promptly gave bond, took the prescribed oath, and duly qualified as such. After this, he filed under oath in said court his affidavit for a rule against Tinsley for contempt, alleging specifically the provisions of the above order, his due qualification as receiver, a personal demand by him on Tinsley for certain property of the company, among other items, its minute book, certain described notes aggregating $1440.50, and a specified sum of $492.52 of trust money, averring that such property was on hand when the court acquired jurisdiction and was within the terms of said order, and also, that Tinsley, holding the custody as officer aforesaid of such property, had refused in willful disobedience of said order to comply with such demand, though having it within his power and ability to do so. The court made its order ruling Tinsley to show cause. After due and reasonable notice, service being accepted, a hearing was had on such affidavit, Tinsley's sworn answer, the replication thereto, and evidence adduced upon the issues, Tinsley and his counsel being present and acquiescing in the course of practice pursued. The court found the facts of the affidavit to be true and those of the answer false, in relation to said minute book, notes and trust fund, but found in Tinsley's favor as to the other items of complaint, including an item of over $3000. In respect to the said minute book, notes and trust fund, the court adjudged Tinsley guilty of contempt in willfully disobeying its order, fined him $100 as a punishment, and, as an aid to the enforcement of its orders, adjudged that he,

having it within his ability and power to comply, be committed to jail until he obey the court's orders by paying the fine and delivering over the minute book, notes and trust fund of money, or until the further order of the court. A warrant of commitment, accompanied with certified copies of both of the above orders, was duly issued, reciting carefully the proceedings, and under the warrant Tinsley was committed to jail on February 6, 1897; and, as shown by the return of the sheriff of Harris County to the writ of habeas corpus granted by this court, Tinsley is now held by such officer in custody by virtue of said warrant, he having failed as yet to obey said orders.

A motion to dismiss the application was filed, in behalf of the State, as follows:

"Now comes the State, by attorney, and moves the court to dismiss the application for writ of habeas corpus herein, and remand the relator to the custody of the sheriff of Harris County, for the reason that said application fails to show, either by the recitals therein or the exhibits thereto attached, that the judgment from which the relief is sought, is void. But on the contrary, the judgment attached thereto, shows upon its face, an adjudication that relator had willfully placed himself in contempt of said court and adjudicates the question as a fact here set up to avoid said judgment against relator. If the truth of all the facts alleged be conceded, the same are not sufficient in law to nullify the judgment rendered. Said application is insufficient for the further reason that it fails to show that the relator has complied, so far as was within his power, with the orders of the court on which the commitment is based."

*Hudson & Seay* and *Fiset & Miller*, for relator.—A contempt proceeding is not the appropriate means of trying questions of property rights. Mr. Tinsley asserted in good faith under oath his right to the property in controversy, and the District Judge had no authority to force him, under the pains and penalties of a contempt to give up that right, but could merely direct the receiver to sue Mr. Tinsley for the property. Ex parte Hollis, 59 Cal., 405; Ex parte Grace, 79 Amer. Decs., 534, 535; State v. Start, 74 Amer. Decs., 278; Baldwin v. Hosmer, 25 L. R. A., 743; Beach on Rec., §§ 216, 247; Parker v. Browning, 8 Paige, 388; State v. Ball, 5 Wash., 387; Ex parte Hardee, 68 Ala., 303; and Thomson, Com. on Law of Corp., §§ 6921, 6924, 6928, 6930.

This court has jurisdiction to ascertain by a writ of habeas corpus whether Mr. Tinsley was, in fact, guilty of a contempt. He alleges that he never had part of the property, the refusal to turn over which was adjudged to be a contempt. If he never had the property, the District Judge erred in finding that he did have it, and that question of fact can not be determined by this court. Ex parte Taylor, 34 Tex. Crim. Rep., 591; Ex parte Degener, 30 Tex. Crim. App., 566; Ex parte Robertson, 27 Tex. Crim. App., 628.

A prosecution for a contempt can only end in a conviction and an im-

position of the statutory penalties or an acquittal; and the court had no power in a prosecution for contempt to make any other order or settle any other issue. Therefore, that part of the judgment which undertakes to order the relator to do certain things and undertakes to punish him in default of obeying such order is invalid. Edrington v. Pridham, 65 Texas, 612; Ex parte Kearby, 35 Tex. Crim. Rep., 531, 634; Rev. Stat., Art. 1101.

The order of the District Judge remanding Tinsley to jail until he should comply with the order of the court was void for uncertainty and indefiniteness. Ex parte Kearby, 35 Tex. Crim. Rep., 531, 634.

The order of the court, confining Tinsley until he should comply with its order was beyond the power of the court to render, because the statute limits the punishment by imprisonment for contempt to three days. Under said order Mr. Tinsley has been in jail for over two months. Ex parte Kearby, 35 Tex. Crim. Rep., 531, 634; Edrington v. Pridham, 65 Texas, 612; Ex parte Robinson, 19 Wall., 505; State v. Kaiser, 8 L. R. A., 584.

*Ewing & Ring* and *Mann Trice*, Assistant Attorney-General, for the State.—The District Court, being one of general jurisdiction, it can not be maintained that there was any defect of power or jurisdiction in the rendition of the order appointing the receiver, and directing delivery to him of the property of the corporation. Church on Habeas Corpus, Sec. 317. The order for delivery was in the usual form in such case. Loveland's Forms, p. 244. No irregularities, however, in this order, if such there were, could affect its validity in a proceeding for contempt based on disobedience of it. Edrington v. Pridham, 65 Texas, 612; Church on Habeas Corpus, 2d Ed., Sec. 331, and cases cited. It follows, that the rule which destroys a contempt proceeding if its basic proceeding is unlawful as in excess of jurisdiction, can have no application to the case in hand. The predicate or basic order here was clearly a lawful exercise of power constitutionally conferred. Const., Art. 5, Sec. 8.

The disobeyed order being a valid one, the only further inquiries are thus well stated:

"On a habeas corpus in a case of commitment for contempt only two questions can be examined, viz: Had the court jurisdiction to commit? And, Is the commitment in legal form? If these questions are affirmatively answered, the court or judge issuing the writ can go no further. It can not inquire into the truth of the facts adjudicated in the forum where the commitment was made." Church on Habeas Corpus, 2d Ed., Sec. 315.

As concerns the procedure and legal form of the commitment, both were in accordance with the most approved practice, and by the strictest rule obtaining observed every technical requirement. It would appear, in view of the authorities, useless to dwell upon this phase of the inquiry. Ex parte Kearby, 35 Tex. Crim. Rep., 531, 634; Rapalje on

Contempts, Secs. 93, 94, 95, 96, 103, 104, 111, 120, 125 and 126. It is to be observed further, that had the committing court found it to be true that Tinsley really held the money and effects adversely to the corporation, before the court acquired jurisdiction of the property, that defense would have been held good. Ex parte Hollis, 59 Cal., 405. Again, had the court found it to be true, that the trust fund of $492.52 was not on hand when it acquired jurisdiction, but was then owing by Tinsley to the corporation as a debt, it would have held this defense good and remitted the parties to a civil action, as it did in respect to the item of over $3000, it not appearing with reasonable certainty that such latter fund was actually on hand in kind when the court acquired jurisdiction. See, in re Leach, 51 Vt., 630, and article in 5 Crim. Law Mag., 174; Rapalje on Contempt, Sec. 35. The distinction is of the radical difference of money on hand as property, and money merely collectible as debt. But we will hereafter more clearly bring out the distinction. The defensive points mentioned, as contained in Tinsley's answer, were found by the court to be a mere sham or pretense, without truth or foundation in fact; and, as we have seen, this court "can not inquire into the truth of the facts adjudicated in the forum where the commitment was made." Church on Habeas Corpus, 2d Ed., Sec. 315.

The order of commitment, as we understand, is challenged as in excess of jurisdiction, on two grounds: 1. That, in its requirement for the payment of money, it is unlawful as being imprisonment for debt. 2. That, in requiring imprisonment until obedience of the orders, it exceeded the statutory limitation and was for an indefinite term. As applied to the case in hand, neither of these propositions is sound. In respect to imprisonment for debt, that is forbidden by the Constitution. Const., Art. 1, Sec. 18. To the distinction between delivery over of money on hand and delivery over of money then owing, we have already adverted. As a matter of principle, aside from authority, the difference is too obvious to question. Take the present case as an illustration. The trial court found as a fact that $492.52 of the trust fund were on hand, in the safe of the corporation, and were taken by Tinsley into his custody after the court acquired jurisdiction of that money, and not of a debt representing the money. The court ordered this money to be delivered over on pain of contempt. The item of over $3000 the court did not find to be money on hand when jurisdiction was obtained, but a debt then owing by Tinsley, and so it remitted the receiver to a civil action for collection of the debt. Can it be true that a court may, on pain of contempt, require other personal property to be delivered over to its officer, but that it is powerless to vindicate its dignity as to the species of property known as money? The statement of the proposition ought to be its sufficient refutation. To contend that the court must vindicate its dignity by enforcing delivery of the money through execution, proves too much. For, as held by our Supreme Court, an execution for money can not issue on contempt proceedings (65 Texas, 612), and hence, if the court may not compel obedience by the usual conviction for contempt,

it is absolutely powerless to vindicate its dignity in that respect. But there can be no doubt about the conclusion of the best considered cases on the subject. "Thus, where the order is made, the process issued, or the judgment or decree rendered by a court having authority or jurisdiction in the matter, neither the regularity of the proceeding nor error committed by the judge or court in the exercise of its jurisdiction can be considered on habeas corpus; as where the relator has been committed * * * for neglecting or refusing after settlement of his account to pay over, under order of the probate court, moneys remaining in his hands, as assets of the estate of which he was administrator; or * * * for refusing to surrender assets to a receiver in obedience to the legal order of a court commanding him to do so, though he be under prosecution, or subject to prosecution, for stealing or embezzling the same (Tolleson v. Green, 83 Ga., 499)." Church on Habeas Corpus, 2nd Ed., Sec. 331. The same author, in a note to Sec. 310, of the work last cited, thus declares the law:

"Fine imposed for contempt is not a 'debt' within the meaning of a constitutional provision providing that 'no person shall ever be imprisoned for debt.' Ex parte Robertson, 27 Tex. Crim. App., 628; 11 Am. St. Rep., 207. So with a sum ordered to be paid as alimony. Ex parte Perkins, 18 Cal., 60. And imprisonment for contempt, in not complying with an order of court to pay over moneys collected by an attorney for his client, is not 'imprisonment for debt,' and is not prohibited by the Constitution. Smith v. McLendon, 59 Ga., 523."

The error of the contention in respect to the punishment exceeding the statutory limitation and being for an indefinite term, is believed to be demonstrable. The committing court is a constitutional court, having from that source the inherent power to make and enforce its orders within the scope of its general jurisdiction. Constitution, Art. 5, Sec. 8. The only method for enforcement of its orders, in vindication of its dignity, is by contempt proceedings. There is no limitation in the organic law of its creation in reference to the term of imprisonment that may be necessary to enforce its orders. By statute, and not by the Constitution, the court has "power to punish by fine not exceeding one hundred dollars, and by imprisonment not exceeding three days, any person guilty of contempt of such court." Rev. Stat. of 1895, Art. 1101. The limitation is clearly upon the power to punish for contempt, and not on the inherent constitutional right to compel obedience of a violated order. The Constitution is the supreme law, and the legislature could never have intended the inherent power mentioned, necessarily implied, to be frustrated by its will or act. Had it so attempted, it is believed such legislation must fall as in conflict with the Constitution. Look at the situation, and take the present refractory applicant as an illustration. The court, with the constitutional power to make and enforce the order contumaciously set at defiance, is met by the proposition that the contemnor, aided by the legislature, may override that constitutional power, thus substituting the base for the apex, and leaving the court utterly

helpless to enforce its lawfully made order. Aside from authority, the proposition seems too monstrous to engender serious doubt. The radical distinction is between fine or imprisonment as a punishment for contempt, as a quasi-criminal offense—that the statute deals with—and imprisonment for contempt as an aid to the enforcement of a lawful order, a civil contempt—that the inherent constitutional powers of the court compasses. A limitation upon the exercise of the latter power is that it must be within the power of the contemnor to comply, and this is specifically adjudged in the present case. Being within his power and ability to comply at any time, his term of imprisonment is not indefinite, but measured by the period of his continued contumacy. It is simply a question whether he will cease his imprisonment by vindicating the court's dignity, or continue his confinement in defiance of its authority. This is voluntary and not involuntary imprisonment, for every moment that it lasts. The order of commitment in this case, following approved precedent (Rapalje on Contempts, pp. 250, 253), qualifies the commitment by making it subject, in the disjunctive, to "the further order of this court," thus obviating by the reservation any question that could arise by adjournment of the term, or from future inability to comply with the order. Let us turn now to the authorities. In Rapalje on Contempts, the law is thus declared·

"It is conclusively settled by a long line of decisions that at common law, all courts of record have an inherent power to punish contempts committed in facie curiæ, such power being essential to the very existence of a court as such, and granted as a necessary incident in establishing a tribunal as a court  *  *  *  each 'superior court' being the judge of its own power to punish contemnors, no other court can question the existence of that power, and the facts constituting the contempt need not be set out in the record. This inherent and necessary power can be exercised by a 'superior court,' independently of statutory authority, and such court may go beyond the powers given by the statute, in order to preserve and enforce its constitutional powers, when acts in contempt invade them. State v. Morrill, 16 Ark., 384; Johns v. Davis, 2 Rob. Va., 729; Rex v. Almon, Wilm., 243. Indeed, the conferment of the power by statute, upon a superior court of record, is deemed no more than declaratory of the common law  *  *  *. There is no distinction, in respect to the inherent right to punish for contempt, between courts of law and courts of equity; the latter possess it as fully as the former." Sections 1, 3.

Comment is deemed unnecessary to show that power to enforce its lawful orders is necessary "to the very existence of a court as such," and therefore, in the case of a constitutional court, by that instrument "granted as a necessary incident in establishing a tribunal as a court." The author last cited thus further considers the subject:

"In the absence of a constitutional provision on the subject, the better opinion seems to be that legislative bodies have not power to limit or regulate the inherent power of courts to punish for contempt. This

power being necessary to the very existence of a court, as such, the legislature has no right to take it away or hamper its free exercise. Arnold v. Commonwealth, 80 Ky., 300; Middlebrook v. State, 43 Conn., 257; Tyler v. Hammersley, 44 Id., 393. This is undoubtedly true in the case of a court created by the Constitution. Such a court can go beyond the provisions of the statute, in order to preserve and enforce its constitutional powers, by treating as contempts, acts which may clearly invade them * * *. A statute which limits the amount of the fine, or term of imprisonment, which the courts may impose, does not deprive them of their power to enforce affirmatively their orders, or to enforce any decree, whether affirmative or otherwise, which may be passed upon the final hearing of a cause. Ex parte Edwards, 11 Fla., 174. * * * One of the definitions of contempt is the disobedience or resistance of a lawful order of a court or judge; and if a court having jurisdiction should issue an improper order, it is obligatory until reversed by an appellate court, and parties may be punished for disobedience or resistance to such orders." Sections 11, 16.

To make perfectly clear the intent of the statute, as applying to quasi-criminal contempts and not to civil contempts, we quote further from the author last cited:

"Civil contempts are those quasi contempts which consist in failing to do something which the contemnor is ordered by the court to do for the benefit or advantage of another party to the proceeding before the court; while criminal contempts are all those acts in disrespect of the court or of its process, or which obstruct the administration of justice or tend to bring the court into disrepute, such as disorderly conduct, insulting behavior in the presence or immediate vicinity of the court, or acts of violence which interrupt its proceedings; also disobedience or resistance of the process of the court, interference with property in the custody of the law, misconduct of officers of the court, etc. Citing among other cases, Ex parte Edwards, 11 Fla., 184; matter of Watson, 3 Lans., N. Y., 408; Hawley v. Bennett, 4 Paige, N. Y., 163. In a recent case in Nevada (Phillips v. Welch, 11 Nev., 187, 190), Beatty, judge, says: 'If the contempt consist in the refusal of a party to do something which he has been ordered to do for the benefit or advantage of the opposite party, the process is civil, and he stands committed until he complies with the order. The order in such a case is not punitive, but executive. If, on the other hand, the contempt consists in a threatened act injurious to the other party, the process is criminal, and conviction is followed by a penalty of fine or imprisonment, or both, which is purely punitive.' * * * In re Chiles (22 Wall., U. S., 157, 168), Miller, judge, says: 'The exercise of this power (to punish for contempt) has a two-fold aspect, namely: First, the proper punishment of the guilty party for his disrespect to the court or its order, and the second, to compel his performance of some act of duty required of him by the court, which he refuses to perform.'" Section 21.

These authorities, it is submitted, leave no doubt that the intent of

the statute was to apply, and it does apply, only to fine or imprison-
ment imposed as a punishment for a quasi-criminal contempt, and that
it has no application whatever, and could not constitutionally have, to
a civil contempt predicated upon the continuous disobedience of a law-
ful order, when to cease the punishment would destroy the order.

Having seen that the order of commitment is not unlawful as viola-
tive of the statutory limitation of punishment, it is hardly necessary to
dwell at length upon the other phase of the proposition, namely, that
the order is unlawful as being for an indefinite term. There are some
expressions in the text books on this subject apt, at first blush, to mis-
lead. But the cases cited, upon critical examination, will leave no doubt,
as to the meaning of the authors. It is quite true that a contempt im-
prisonment for an indefinite term, is unlawful. Such would be an im-
prisonment, not limited in duration by the performance of an act within
the ability of the party to perform, but generally "until the further or-
der of the court." This would plainly leave the imprisonment to be
measured solely by the future pleasure of the court, and would hence
be bad. But we have in hand a very different case. Here the impris-
onment absolutely ends as soon as the contemnor, who has it within his
power and ability to do so, pays the fine and delivers over the property.
Should he not do so, still the court reserves the power as against the lapse
of the term or future disability or other contingency, to discharge
him any way. In other words, if he complies he is ipso facto dis-
charged; if he does not comply, he may nevertheless be discharged if
the committing court so orders. But a reference to the authorities,
must remove any question, if such could find lodgment, on this point.
In Church on Habeas Corpus, Sec. 334, the rule forbidding an inde-
finite term of imprisonment is stated. The author cites People ex rel.
Hinckley v. Pirfenbrink, 96 Ill., 68; In re Hammel, 9 R. I., 248; In
re Leach, 51 Vt., 630. We have not had access to the case cited from
Rhode Island, but we have examined the cases from Illinois and Ver-
mont. In neither of them was there such an order under consideration
as that passed against Tinsley, and in both of them it was conceded that
a commitment until compliance with an order lawfully made, would be
valid. The author last mentioned (Church), after stating the effect of
the decisions on the question of indefinite term, thus proceeds:

"It must be observed, however, that a bare commitment for contempt
'until the further order of the court' is quite different from a case in
which a fine has been imposed, and imprisonment ordered until a cer-
tain act is done or order complied with, 'or until further order of the
court,' as this is a valid commitment. Ex parte Harris, 4 Utah, 5; Ex
parte Henshaw, 73 Cal., 486, 494; Ex parte Smith, 117 Il̅ 63. * * *
As the court may enforce compliance with its orders by imprisonment
for contempt for their violation, the only remedy for the prisoner is to
purge himself of the contempt by showing to the satisfaction of the
court his inability to obey the order, and that such inability has not
been caused by his own act for the purpose of avoiding the order. The

finding of the initial court, however, as to his ability, is conclusive upon habeas corpus, and he can not be discharged from imprisoment, on this writ, if the facts showing jurisdiction appear upon the record  *  *  *. A commitment for contempt, however, for not complying with an order of court must show on its face that the person committed had the ability to comply, or it will be held bad and the prisoner discharged." 2nd Ed., Secs. 337, 338.

In Rapelje on Contempts, Secs. 129 and 130, it is thus declared: "Thus, it has been directly held that an order for committal for contempt until the further order of the court, as a punishment, and not as an aid to the enforcement of a previous order, is void for uncertainty *  *  *. The reason of these rulings is that imprisonment for contempt, as a punishment, is imprisonment under final commitment for a criminal offense, and its duration should be as certainly defined as that of a sentence for any other crime. On the other hand, where a statute authorizes or prescribes the infliction of a fine, as a punishment for contempt of court, it is lawful for the court inflicting the fine to direct that the party stand committed until the fine is paid, although there be no specific affirmative grant of power in the statute to make such direction. Fischer v. Hayes, 6 Fed. Rep., 63; Ex parte Crittenden, 62 Cal., 534. *  *  * In New York it has been held that a party in contempt for refusing to obey an order of the court to deliver over his property to a receiver, may be committed to close imprisonment until compliance with the order of the court and payment of the costs of the proceeding."

HENDERSON, JUDGE.—This is an original application to this court for a writ of habeas corpus. It appears that heretofore, in the District Court of Harris County, Drew and others brought a suit against the Houston Cemetery Company, a corporation, and others, and, among other things, prayed for the appointment of a receiver. William Christian was appointed receiver, and, in the judgment appointing him, he was ordered, after giving bond and making affidavit, etc., to take possession of all the property of the Houston Cemetery Company, and, among other things certain described notes, the minute book of said corporation, alleged to be in the hands of Thomas Tinsley, and also $492.52, a trust fund, alleged to be in the hands of said Thomas Tinsley. Thomas Tinsley was a defendant in said suit, and the order was directed to him to turn over said property to the receiver. Said receiver demanded the same, and, on the refusal of said Tinsley to make the delivery thereof, a writ of attachment was served on him, and he was brought before the court to show cause why he should not be committed for contempt of court in failing and refusing to deliver said property to the receiver. The applicant, Tinsley, filed his answer, and the matter was presented to the court, evidence heard on the issues presented, and the court made its order fining said Thomas Tinsley in the sum of $100, committing him to the custody of the sheriff and to the jail of Harris County as for a contempt of court, on account of his failure to turn over

and deliver said property to the receiver; and the sheriff was instructed to hold him until said fine was paid, and, further, to retain him in custody until said property should be delivered to the receiver, or until the further order of the court. Said Thomas Tinsley made an application for a writ of habeas corpus to this court, which was granted, and the writ issued. On his being brought before the court, the respondent moved to dismiss the application and said writ, and remand the relato⁻ to the sheriff of Harris County, for the reason "that said applicatioɪ fails to show, either by the recitals therein or the exhibits thereto attached, that the judgment from which the relief is sought is void; but on the contrary, the judgment attached thereto shows upon its face an adjudication, and the relator had willfully placed himself in contempt of said court, and adjudicates the question as a fact here set up to avoid said judgment against relator. If the truth of all of the facts alleged bɪ conceded, the same are not sufficient in law to nullify the judgment rendered. (2) Said application is insufficient for the further reason that it fails to show that the relator has complied, so far as was within hiᴤ power, with the orders of the court on which the contempt is based." This brings before us the question whether or not the matters and things contained in the application show a void judgment, or one which is merely erroneous; the rule being that where a court has jurisdiction over the subject-matter, although its judgment may be erroneous, it is not void, and in such case it cannot be reviewed on habeas corpus, but where the court is without jurisdiction of the subject-matter or of the parties, or lacks power to make the order in the particular case, it cannot punish for contempt or disobedience of such order. See, Railroad Co. v. Wear (Mo. Sup.), 36 S. W. Rep., 357; In re McCain (S. D.), 68 N. W. Rep., 163; Ex parte Kearney, 7 Wheat., 38; Ex parte Kilgore, 3 Tex. Crim. App., 247. On the motion to dismiss, the question is to be tried on the application for the writ, and we will set out such parts of the petition as are essential to a disposition of this case. As stated before, the relator sets out in his application for the writ the proceedings on which the court below committed him for contempt—that is, perhaps not all of the proceedings, but the substantial features of the suit, and the main facts upon which the court based its action—which are as follows: On the 23rd of April, 1896, Drew and others (some of the stockholders in the Houston Cemetery Company, a private corporation) brought suit in the District Court of Harris County against said corporation, and Thomas Tinsley and others were made parties defendant therein. The corporation and the defendant answered in said suit. Among other things, the object of the suit was the appointment of a receiver to take charge of the property of the alleged insolvent corporation. On the hearing, William Christian was appointed receiver, and the court made its order requiring Thomas Tinsley to turn over and deliver to said receiver all of the property of said corporation in his possession. On the 21st of February, 1897, thereafter, said receiver demanded of said Tinsley that he turn over to him a list of the notes described in Exhibit

A to the application, and a certain book, known as the "minute book" of said corporation, and also $492.52 in cash, alleged to be a trust fund in the possession of said Tinsley, and belonging to said company. It is alleged that the applicant refused to turn over this property to the receiver on the ground that he did not have and never had in his possession certain of said notes, which are set out in said petition, and that the remainder of said notes (as set out in Exhibit B to the petition) and the minute book of said corporation said applicant, Tinsley, claimed to hold and to have the right to hold in possession as collateral security for a certain note of $1500 for money loaned by him to said corporation prior to the appointment of the receiver. As to the $492.52, applicant alleges that he never held said money in trust, but that one Wisby held the same, and had appropriated it, and that applicant had simply assumed to pay the same to the corporation, and that he did not hold the same in trust, but that it was a debt due by him to the company. He further alleges that he is solvent, and able to respond to any judgment that may be rendered against him in favor of the receiver on account of said property. Applicant alleges that said order requiring him to surrender certain property and pay over said money is without due course of law, and is null and void, and that an adjudication by the court that he was guilty of contempt in refusing and failing to do so, and fining him $100, is null and void. He further contends that said judgment is null and void because John G. Tod, the judge who tried said cause, was at the date thereof related to C. H. Milby and wife, Maggie Milby, within the third degree, and that C. H. and Maggie Milby were stockholders in said corporation. He further says that said judgment and commitment were null and void because the imprisonment is for an uncertain and indefinite period of time, and because he is not able to comply with said order. And he further alleges that the statute fixes the amount of punishment at a fine of $100 and imprisonment not exceeding three days, and that the judgment was excessive, and so null and void. He further charges that the matters set up and alleged do not and could not constitute a contempt, and that his confinement under said order of the court is null and void. In connection with the petition, the judgment of the court, appointing a receiver and ordering said Thomas Tinsley to turn over the property in his possession to the receiver, William Christian, is attached thereto as an exhibit. Also, the following by exhibits: An application on the part of said receiver, showing to the court his demand upon Tinsley for said property, and his refusal to turn over and surrender the same to him, and praying that he appear at the court house, at a time fixed by the court, to show cause why he should not be punished for his misconduct in disobeying said order, as for a contempt of court. Also, the order of the court based thereon, requiring the defendant, Thomas Tinsley, to show cause before the District Court of Harris County why he should not be punished for contempt of court in disobeying the decree of the court of April 3, 1896, etc. And also the judgment of the court on said application, as follows: "Monday, Feb-

ruary 8th, 1897.  (No. 18,969.)  Octavius C. Drew et al. v. Houston
Cemetery Company et al.  In the Matter of William Christian, as Re-
ceiver Herein, Informant, against Thomas Tinsley, Respondent, for
Contempt, etc.  This 6th day of February, A. D. 1897, came on to be
heard in open court the proceedings for contempt of this, the District
Court of Harris County, Texas, against the respondent, Thomas Tins-
ley, upon the affidavit of said William Christian, as receiver, for a rule
to show cause, etc., and the court's rule to show cause therein, both of
February 2, 1897, and the answer of said respondent to such rule, and
the replication of said informant to such answer, both this day filed
herein; said respondent meantime having had due and reasonable notice
in this behalf, and appeared in person and by attorney, and announced
ready for the hearing:   And the court having heard such affidavit, rule
to show cause, answer and replication, and the evidence adduced, both
oral and written, in support of the issues so tendered and joined, as
well as the argument of counsel, doth find and declare:   That the facts
set forth in said affidavit and the special plea of said replication are
true as concerns the minute book, notes, and trust fund of four hun-
dred ninety-two dollars and fifty-two cents, as herein specified, and
that said respondent, under the evidence adduced, has failed to show
cause as required, by the answer aforesaid, good or sufficient in law.
Therefore it is considered by the court, ordered, and adjudged
that the said respondent, Thomas Tinsley, is guilty of a contempt
of this court, in having willfully disobeyed the court's order made
and rendered in the above numbered and entitled cause on, to-wit:
the 23rd day of April, A. D. 1896, appointing William Christian re-
ceiver of the property of every description of the Houston Cemetery
Company, etc., etc., by failing and refusing to turn over to said Wil-
liam Christian, as such receiver, after he had taken the oath and given
bond, which was approved, and duly qualified as such receiver, as re-
quired by said order, notwithstanding due and personal demand made
therefor upon him (Thomas Tinsley) by said William Christian, receiver
as aforesaid, and though having it then and now within his power and
ability to comply, the following described property of, and beloning
to, said Houston Cemetery Company, covered by such order, to which
it was entitled; the same being then and still held and controlled by him
(Thomas Tinsley) as an officer of said Houston Cemetery Company, to-
wit:   (1) The notes belonging to said Houston Cemetery Company, as
its bills receivable then and thereto on hand, and covered by and em-
braced in said order of April 23, 1896, amounting to the sum of four-
teen hundred and forty dollars and fifty cents, as shown by the schedule
marked 'Exhibit A,' attached to the aforesaid affidavit, which schedule
the clerk is directed to record on the minutes in connection herewith,
and to be taken as a part hereof.   (2) That certain book belonging to
said Houston Cemetery Company, and known as its 'minute book,' then
and there on hand, and covered by and embraced in said order of April
23, 1896.   (3) The portion of the trust fund to which said Houston
  37th Tex. Crim. Rep.  34.

Cemetery Company was entitled under its charter and by-laws, which accrued for and during the years A. D. 1894 and A. D. 1895, covered by and embraced in said order of April 23, 1896, amounting to the sum of four hundred ninety-two dollars and fifty-two cents. And the court doth further consider and adjudge, order and direct, that the said contemner, Thomas Tinsley, pay to the sheriff of Harris County, Texas, a fine of one hundred dollars, as a punishment for the contempt afore-said, and that he forthwith turn over and deliver to said William Christian, as receiver aforesaid, the said notes, minute book, and trust fund of four hundred ninety-two dollars and fifty-two cents, as an aid to the enforcement of the aforesaid order of April 23, 1896, and that in default of immediate payment of said fine, and of the delivery and turning over forthwith to said William Christian, as receiver aforesaid, of said notes, minute book and trust fund of four hundred ninety-two dollars and fifty-two cents, he, the said contemner, Thomas Tinsley, be imprisoned in the common jail of Harris County, Texas, until he shall pay the said fine of one hundred dollars as herein directed, and until he shall turn over and deliver to the said William Christian as aforesaid—the said sheriff affording him (said Thomas Tinsley) a reasonable opportunity to do so, if he shall so de-sire—the said notes, minute book, and trust fund of four hundred ninety-two dollars and fifty-two cents, and until he shall pay to the sheriff aforesaid his cost for executing the commitment hereunder, or until he shall be discharged by the further order of this court, and that, to carry this judgment into effect, the clerk of this court do forthwith, under his hand and the seal of this court, issue a commitment, in terms of the law reciting generally the proceedings herein, and to which there shall be attached, as Exhibit A thereof, a certified copy of the aforesaid order of April 23, 1896, under the seal of this court, and to which there shall also be attached, as Exhibit B thereof, the schedule of the afore-said notes annexed to the aforesaid affidavit, or a copy of such schedule; and the clerk of this court shall also, in addition to the warrant of com-mitment, deliver to said sheriff a certified copy of this judgment, to be held by him as further evidence of his authority for the commitment hereby directed by the court. John G. Tod, Judge Eleventh Judicial Dis-trict of Texas." A schedule of the notes referred to in the above order accompanies this judgment. Following this order is a copy of the writ of commitment. All of these appear to us to be regular in form. As to the proposition of the relator that said judgment appointing a receiver is null and void because some of the stockholders were related to the judge making the appointment of the receiver, in view of the decision of the Supreme Court in said case, which was appealed, the same is not tenable. See, Cemetery Co. v. Drew (Tex. Civ. App.), 36 S. W. Rep., 802. The applicant refers us to a number of cases to support his con-tention that the court had no authority to make the order which it did, requiring the said Thomas Tinsley to turn over said property to the re-ceiver—it being shown that he set up a claim thereto in his own right—

insisting that, if the court could enforce such order, it would be authorizing one person to take the property of another without due process of law; that, if the receiver had any claim to the same, the courts of the country were open to him, and to recover the same he could bring his suit as any citizen, and that the action of the court in this regard was tantamount to imprisoning the applicant for debt. Among other cases, he cites us to the case of Edrington v. Pridham, 65 Texas, 612. But we do not understand that case to decide the question of the power of the court to punish for contempt. This matter was not before the court. The question really decided was that the proceeding being originally in the nature of a contempt, and having been conducted as a contempt proceeding, a judgment for debt, with execution, could not be rendered against the defendant. The court say, in passing, that the "statute authorizes the District Court to impose, for contempt, a fine not exceeding one hundred dollars; but if this limitation is unauthorized (Rap., Contempt, § 11), we cannot consider a judgment in favor of the receiver for $2500, to be collected by execution, as an exercise by the court of its inherent power to fine for contempt. Such a judgment does not vindicate the dignity of the court. It redresses private injury. The prosecution of the plaintiff in error for contempt did not warrant the civil judgment against him." In Ex parte Hollis, 59 Cal., 405, the court held that Hollis was not a party to the suit, and the order requiring him to turn over certain property which he claimed as his individual property was without authority of law and void. This is a well-considered case, and a number of cases in bankruptcy are cited, and all these are to the same effect—that a court has no authority to act by its orders on a third party, and compel him to turn over property to an officer appointed by the court. We quote from Hollis' case as follows: "The question therefore arises whether a superior court has authority to adjudge a party guilty of contempt, and to fine and imprison him, for not turning over to a receiver in insolvency moneys and effects, part of which he claims adversely to the insolvent debtor, and the other part is also claimed adversely by a corporation with which he is not connected as an executive officer or director. We think such a power cannot be exercised over a party unless he has collected and holds the money and effects as trustee for the estate of the insolvent debtor, and the court has jurisdiction over him as an officer of the court, or as a party to the proceedings. Ex parte Perkins, 18 Cal., 64; Ex parte Smith, 53 Cal., 204; Ex parte Cohn, 55 Cal., 196. It is not claimed that the Real-Estate and Building Association was an officer of the court, or a party to the proceedings in insolvency, nor was the petitioner. Verifying the answer of the insolvent debtor did not make him a party. Process against the corporation brought the corporation alone into court. Being in court, it verified and filed its pleadings according to law. It was the only party to the record. Neither the president, secretary, the individual directors, nor stockholders were parties to the proceeding. Apperson v. Insurance Co., 38 N. J. Law, 272." To the same effect is

the case of State v. Ball, 5 Wash., 387; 31 Pac., 975. Beach, Rec., §§ 216, 247, to which applicant refers, is simply to the effect that the court, in ordering the property to be turned over to a receiver, will not try the title to the property, and is not authorized to make an order, unless the party in possession is before the court. Thomp. Rec., §§ 6921, 6928, to which we are cited, is to the effect that the receiver has no right to seize goods in the possession of a stranger to the action, and make himself the arbitrator of the title and the right to the posses-- sion of said goods, but it is his duty to bring the proper action to re- cover possession. Process of contempt cannot be resorted to to force third parties to deliver property of which he has never had possession to a receiver, though the receiver may have authority to obtain posses- sion of the property from them by proper proceeding. To the same. effect is High, Rec., §§ 165-170, inclusive. In the case before us the applicant was not a stranger to the proceeding. He avers that he was a. party, and he claims, not the fee in the notes and minute book, but simply that he had a lien on the same; and he insists that the court had no authority and no power to require him to surrender the same to the receiver, because, he says, having a lien, he was entitled to the posses- sion. Now, there can be no question that the District Judge had juris- diction of the case, had authority to appoint a receiver, and had author- ity to order and require the officers of the corporation to turn over the property of the corporation in their hands to said receiver. The au- thorities go to the extent of holding that, even if the court should com- mit an error in the judgment as to the property, the parties before the court cannot refuse to surrender the property to the receiver. In Parker v. Browning, 8 Paige, 388, it is held that the receiver or the party who wishes an actual delivery of the property should call upon the master to. decide what property, legal or equitable, belonging to the defendant,. and to which the receiver is entitled under the order of the court, is in possession of the defendant, or under his power or control. And it is the duty of the master to direct the defendant to deliver to the receiver the actual possession of all such property, or to allow him to take pos- session thereof. If the defendant is dissatisfied with such decision of the master, he must apply to the court to review the decision, or he will be compelled by process of contempt to comply with the master's direc- tions. Where property is in the possession of a third person, who claims the right to retain it, the receiver must either proceeed by suit against him, or the complainant must make him a party to his suit, and apply to have the receiver to take the property in his hands, so that an order may be made for its delivery, which may be enforced by process of contempt. In Tolman v. Jones, 114 Ill., 148, 28 N. E. Rep., 464, it is held: Where a court of chancery has acquired jurisdiction over the prop- erty of an insolvent corporation, and of the defendant claiming the same, its order on the defendant to assign and turn over the property claimed by him to a receiver, for its preservation, must be obeyed, however er- roneous it may be. And the fact that such order may be too broad, and

require the transfer of some of the property wrongfully, will not justify the defendant in refusing to obey. An error in the exercise of the juris-diction of the court, in an order to one of the defendants to assign and deliver to the receiver some property not belonging to the corporation, will not render the order void as to such property, and justify the de-fendant in refusing to obey the same. In such case the test of jurisdic-tion as to the subject-matter will be the allegation of the bill, and not the proof under it. But even if the order of the court is void in part, in requiring certain property not derived from the corporation to be de-livered, the remedy of the defendant is to apply to the court for a mod-ification of the order. If he fails to pursue this remedy, and fails to obey the order, he may be committed for a contempt of court. Where a party's refusal to make a delivery of property to a receiver in pursu-ance to an order of court is reported to the court, and he is present when the matter is considered, and makes no objection to the proceed-ings, and is fully heard by himself and counsel in the matter, and, after being ordered by the court to execute the delivery, refuses to do so, the court will be justified in making an order for his commitment for con-tempt, without any rule on him to show cause to the contrary. On an appeal from an order of the court committing a defendant to the county jail for refusing to obey a prior order requiring him to assign and hand over certain property to a receiver, no error in such prior order can be considered. The only question as to such prior order that can be con-sidered is whether the court had jurisdiction to make it. It matters not, so far as the question of condemnation is concerned, whether such order was made on sufficient proof or not. The relator in that case claimed that some of the property did not belong to the corporation, and was not embraced in the order, and the court had no right to make an order requiring the same to be turned over. But it was held that the court had jurisdiction of the subject-matter and of the parties, and it had the power to make such order, and to commit the party for contempt for re-fusing to obey the same. In re Rosenberg, 90 Wis., 581, 63 N. W. Rep., 1065, and 64 N. W. Rep., 299, which was a contempt proceed-ing—a bill of discovery in which the party refused to answer—it is held that in a habeas corpus proceeding only jurisdictional questions will be inquired into. The court say: "The power to determine is jurisdic-tional. The correctness or justness of the determination of the ques-tion is not open for consideration on a habeas corpus proceeding." It further holds "that the writ of habeas corpus will not be issued where, upon the hearing of the application therefor, it appears that the court must, in the end, remand the prisoner." It will be observed, as before stated, that the relator did not claim the legal title in the notes or in the minute book, but merely an equity or a lien thereon to secure his debt. It seems that he, as an officer of the company, had transferred to himself, as an individual, through the direction of some of the stock-holders, the notes and minute book in question. The action of the court in ordering him to turn over said property to the receiver was by

no means an adjudication as to his lien. This, if it was a genuine lien, would be preserved to him in the hands of the receiver. The effect of the order was merely to place these articles, together with all the property of the corporation, in the hands of the receiver for administration under the orders of the court. In our opinion, the court unquestionably had the power to do this, and did not exceed its jurisdiction in making said order. As to the fund: If it be not a trust fund in possession of relator, but a mere debt, it may be that it would not be competent for the court to have made the order requiring this fund to be turned over to the receiver. However, that question was submitted to the court. The record shows that proof was heard upon this question, and the court below decided that this was a trust fund in the hands of the relator. If it be conceded, however, that it was a debt due by the relator to the corporation, still the relator was in contempt of court as to the remainder of the property—that is, the balance of the notes and the minute book—and the order was unquestionably valid as to these. And, the relator not having responded to the order of the court as to these matters, we do not feel inclined to grant him any relief. It would be his duty to show before this court, in order to obtain relief by the writ of habeas corpus, that he had done all within his power to comply with that portion of the order of the court which it unquestionably had a right to make. Applicant also contends that the court exceeded its power in assessing the punishment it did against him; claiming that the punishment imposed would cause his imprisonment beyond the three days authorized by statute. It will be noted that the court in exercising its punitive authority, only fined the relator $100. It imposed no imprisonment as a penalty. On the relator responding to the order of the court, he would have been immediately enlarged, and need not go to jail for a moment. We are cited to the case of Ex parte Kearby, 35 Tex. Crim. Rep., 531 and 634, but in that case we were speaking of the power of the court to punish, and stated that that power was circumscribed and limited by the statue. We were not then discussing the question of the authority of the coar to enforce its orders and decrees. If, under this statute, it was given to a party to refuse to obey the orders of a court by merely submitting to a fine of $100 and three days' imprisonment, and then go free, still contumacious of the order of the court, the court would be rendered powerless to enforce its orders. It either follows that the court would be authorized, after having imposed a fine of $100 and three days' imprisonment, on the payment of said fine and serving three days in jail, to bring the recalcitrant party before the court, and then demand if he was willing to comply with its orders, and, on refusal so to do, to repeat, and continue to repeat, the fine and costs, by distinct orders; or, on the other hand, without imposing any imprisonment, on the refusal of the party to comply with the orders of the court to remand him to the custody of the officer until he did comply. There might be some question in treating a continued contempt as a new contempt. There certainly can be no punishment at

all in ordering a party to do that which is within the power of the court to order, and which is within his ability to perform; and in such case, if the party is punished at all, it would appear to be self-inflicted. So far as the statute with reference to punishments for contempt is concerned, that is a mode of enforcing the rights of the court and of preserving its respect and dignity. It is a punishment. The other is not a punishment, but a specific mode of enforcing a particular duty. Conceding that the court has the power and authority to require the duty, the going to jail by the party is a self-imposed punishment, and not the imposition of a punishment by the court. The order in such a case is not punitive, but remedial. See, Phillips v. Welch, 11 Nev., 187. We hold that the court, in imposing the fine it did, did not exceed its pecuniary punishment, and that its order to the relator to turn over the property as commanded in the judgment was not the assessment of any imprisonment as a punishment. It was a command of the court, which the court had a right to make in the exercise of its duty; and although the court, in the alternative, ordered the relator into the custody of the sheriff until said order was complied with, yet the court gave the relator full opportunity of compliance. If he preferred to go to jail rather than comply, and that alternative was adopted by him, it necessarily appertains to the inherent power of the court to carry on the administration of justice to thus compel obedience to its orders. In our opinion, the court a quo did not exceed its power or authority in making the order it did in this case; and, the application for the writ of habeas corpus showing that the party is legally restrained and has no right to the writ, the motion to dismiss the same is sustained, and the relator is remanded to the custody of the sheriff of Harris County.

*Habeas Corpus Refused and Application Dismissed.*

[NOTE.—Motion for rehearing filed on April 26th was overruled without a written opinion on May 12, 1897.—Reporter.]