## Ex Parte M. F. Lake.

### No. 1209.    Decided May 26th, 1897.

**1.   Extradition—Habeas Corpus—Constructive Contempt of Court.**

Applicant, as extradition agent, obtained, from the governor, a requisition for, and arrested, the prisoner, one E. E. sued out a writ of habeas corpus for informality in the warrant, and was discharged. Applicant rearrested him upon complaint before a justice of the peace, and applied to the governor for a correct warrant which the governor issued and directed to the sheriff of the county. Before this corrected warrant was issued, E. again applied to judge for another writ of habeas corpus; and both counsel for applicant and the prisoner appeared before the judge and argued the propriety of granting the habeas corpus. While the judge was considering whether he would grant the second habeas corpus writ or not, the governor's second warrant was received by the sheriff who rearrested the prisoner and delivered him to applicant, the authorized extradition agent, and applicant left with the prisoner. The judge telegraphed a warrant for his arrest, and he was arrested en route, brought back and fined by the judge for a contempt of court. Held: The judgment of contempt was void: (1) Because, the District Judge had obtained no jurisdiction over prisoner, no writ of habeas corpus having issued when appellant took him away. (2) Because, the judge had obtained no jurisdiction over applicant at the time of the supposed contempt. (3) Because, applicant had violated or disobeyed no order of the court, there being no order, decree, writ or other process in existence, nor any order made for any writ to issue forbidding him from doing what he did. (4) Applicant only did what it was his duty to do under the command of the legal warrant of the governor, there being no order or decree of court prohibiting him from obeying the writ of the governor.

**2.   Same—Jurisdiction.**

The rule, deducible from the authorities, is that, unless the court has jurisdiction of the supposed contemner, or some order, decree or process has been resisted or disobeyed, the court has no jurisdiction to punish for contempt. Jurisdiction over the party will not confer power to punish for contempt, unless some order, decree or process has been resisted or the party has been guilty of some act of malpractice in the case, or has disobeyed reasonable rules of the court. (Exceptions in cases of newspaper articles.)

**3.   Same.**

To be guilty of a constructive contempt of court, there must have existed, at the time, some order or writ which the supposed contemner violated.

From McLennan County.

An original application to the Court of Criminal Appeals, for a writ of habeas corpus to be relieved from a judgment imposing a fine for contempt.

The case is stated in the opinion.

The Assistant Attorney-General filed the following motion to dismiss the application, and his argument in support of the motion, viz:

"Now comes the State, by attorney, and moves the court to dismiss the application for habeas corpus herein, and remand the relator to the custody of the sheriff of McLennan County to abide the judgment of the District Court of said county; because the application and exhibits thereto fail to show that the judgment from which relief is sought is void, for either want of jurisdiction, or power of the District Court of McLennan County to render the particular judgment herein rendered. This not appearing, and no complaint being made as to the form or val-

idity of the commitment, this court acquires no jurisdiction to grant the relief prayed for."

May it please the Court: Whenever relief is sought from a commitment for contempt, it devolves upon the party seeking the relief to show that the judgment is absolutely void, or that the commitment is not in proper form. The inquiry as to whether the judgment is void, is limited to two considerations; first, did the court have power to hear and determine the particular matter? And second, did the court have power to render the particular judgment which was rendered? If either of these two elements are lacking the judgment is fatally defective. Ex parte . Degener, 30 Tex. Crim. App., 560.

Relator makes no question as to the form of the commitment; and therefore the inquiry under consideration is limited to the validity of the judgment. All the authorities agree that the presumption prevails in favor of the validity of the judgment when rendered; and it devolves upon the party assailing it, to show by proper and distinct averments, sufficient cause to vitiate the same. Among the various causes that would render a judgment void all are usually referable to the inquiry as to whether the court had jurisdiction; or whether the judgment was obtained by fraud, or the result of accident or mistake. It is elementary, that in order to overcome the presumption in favor of the validity of the judgment, that affirmative and distinctive allegations bringing the case within the causes before enumerated, should be made, before any inquiry or evidence could be adduced tending to impeach or nullify the judgment. Where habeas corpus, appeal, or writ of error is resorted to for relief, in case of commitment for contempt, the case is not triable de novo on the merits; nor are matters properly examinable in the court below, examinable in the appellate court, but the jurisdiction vel non of the lower court, furnishes the only appropriate subject of inquiry. See, Brown on Jurisdiction, Sec. 98; Vol. 4, Ency. Plead. and Prac., 814; Cooper v. State, 13 Col. 337; Pullman v. Jones, 114 Ill., 147; In re Pryor, 18 Kan., 72; Houghton v. Irwin, 166 Penn. Stat., 548.

Tested by these well known rules, it is contended by the State that the application herein wholly fails to show that the judgment is void, but on the contrary, the judgment, which is attached as an exhibit to the application, shows upon its face all necessary jurisdictional facts, and that the matters adjudicated constitute a contempt of the trial court on the part of the relator, and that the trial court had full power in the premises to render the same. The application fails to negative the truth of any of the material recitals in the judgment; and an analysis of the same will show that it is nothing more than an attempt at a trial de novo in this court.

The judgment is as follows: "On this day came on to be heard the answer and showing of M. F. Lake, as to why the judgment nisi entered against him in this court on the 12th day of February, 1897, for contempt of this court and imposing upon him a fine of $100, and confinement in the county jail of McLennan County for three days, should

not be made final; and after hearing said answer and the evidence offered in connection therewith the court is of the opinion that said M. F. Lake has not purged himself, but is in contempt of this court, in this: that pending a hearing by the judge of this court of an application for a writ of habeas corpus, which had been presented to the said judge of said court by Frank Edwards, and which was then being heard, and of which proceeding the said Lake had full notice and knowledge, and to which he had made himself a party by voluntarily appearing before the said judge in person and by attorneys in said proceedings, and protesting against the issuance of said writs—and while said application, and said Lake's protest thereto was being argued and submitted by said Lake's attorneys to the said judge of this court, said Lake procured the custody of said Edwards and forcibly carried him out of the city of Waco, and this county, for the purpose and with the intent of avoiding the process of this court, and in contempt and disrespect of this court and its proceedings, and for the purpose of interfering with and hindering this court in the administration of justice: * * *.

"It is therefore ordered, adjudged and decreed by the court that the State of Texas do have and recover of and from the said M. F. Lake the said sum of fifty dollars, together with all costs of this proceeding, and that he be remanded to the custody of the sheriff of McLennan County, until such fine and costs are paid."

This shows the consideration of a case submitted to said court, and that relator voluntarily made himself a party to said cause; that before a decision was rendered, and while the matter was under argument and advisement, the relator, without notice to or permission from the court, forcibly removed the applicant for relief in said proceeding, which action would have prevented the prompt execution of any order the court may have made in reference to the party seeking relief. Such conduct as this has been held a contempt of court. "An attachment for contempt will lie against a master who attempts to remove his slave out of the jurisdiction of the court, after he has notice of the slave's petition for freedom." See, Richard v. Van Meter, 3 Cranch., U. S. C. C., 214; Fed. Cases, Vol. 20, p. 682; Rapalje on Contempt, pp. 30, 34; State v. Sparks, 27 Texas, 627.

Relator seems to base his contention for relief in this case upon the theories: first, that there had been no order made by the trial court in reference to the habeas corpus proceeding of Edwards; and second, that the trial court had no power to grant the writ, he being a fugitive from justice and proceedings have been filed against him as required by Code Criminal Procedure.

Grant for the sake of argument, that no order had been made, and that the court had no power to grant the writ in question, the judgment rendered committing the relator does not show that this commitment was for a disobeyance of any order of the court, but for conduct calculated to hinder, delay and obstruct any order that might have been made in the premises. In the case of State v. Sparks, supra, it is shown, that

at the time the District Court of Travis County issued the writ of habeas corpus, the writ had been suspended by the act of Congress and the relator filed a request with the court to remove the prisoner, stating the facts, but without consent of the court removed the prisoner. Judge Moore, in rendering the opinion in this case, held Sparks in contempt, as well as his superior officer, who gave him the order to remove the prisoner, while the District Court of Travis County had under consideration the habeas corpus proceedings. In that case the court was not engaged in the trial of the prisoner, but had the matter under consideration when the military authorities removed them. The court says: "The continuance of a question before a court that it be correctly determined by the aid of proper reflection and the examination of precedent and authority, can only be regarded as a justification or extenuation of such an act as was committed by the defendant, when the civil tribunals of the country sit merely for the purpose of registering the edicts of military authorities."

This case seems to be conclusive of the one under consideration, for it is apparent that whether Judge Surratt had the power to discharge Edwards is unimportant—Lake had voluntarily submitted himself to the jurisdiction of the court, and if the judgment rendered by the court had been void, the parties aggrieved thereby had their legal remedy.

To institute a fictitious proceeding for the purpose of obtaining the opinion of the court, or of obtaining the opinion of the court affecting the rights of persons not parties to the controversy, has been declared contempt of court. 3 Amer. and Eng. Ency. of Law, p. 787; Lord v. Veasie, 8 How., 251; Cleveland v. Chamberlain, 1 Black., 419.

And it is submitted that the conduct of Lake in this case is not materially different from the cases mentioned. If Judge Surratt had committed Edwards or refused to have granted the writ, Edwards had his remedy. In short, if he had made any illegal or void order in the matter, the same could have been promptly reviewed by appropriate proceedings, or if he had discharged Edwards, it appears that Lake was in possession of the executive warrant for his transportation to Oklahoma, and his spiriting Edwards away, under the circumstances, was entirely unnecessary, and could accomplish but one purpose, that is, place himself in contempt of Judge Surratt's court. This much has been said to show that the court had the power under the circumstances to render the judgment. Now, how does the relator meet this? (1) By showing that he had no notice of any order or process issued by Judge Surratt in reference to Edwards. As before indicated, the relator was not adjudged guilty of contempt for disobeying any order or writ, as to whether any was in fact issued is unimportant in view of the recitals of the judgment. (2) Relator disclaims any intention of acting in contempt of court. The judgment adjudicated the issue against him, and he does not show anything contradictory of the judgment, but simply reiterates his answer filed in the court below. The evidence may have been overwhelmingly against relator upon this point. Be that as it may, it de-

volves upon the relator to show facts sufficient to impeach the recitals in the judgment, and as the matter appears before this court on the showing made, the question is conclusive and res adjudicata, and can not be inquired into in the absence of the necessary allegations.

The pardon set forth in the application cannot avail relaton to the extent of remitting the cost, for the reason that said pardon is only partial, and by its terms the costs are not included. "Executive pardon is either full, partial or conditional. It is full when it absolves the party from all the legal consequences of his crime. It is partial when it remits only a portion of his punishment." Carr. v. State, 19 Tex. Crim. App., 635. I take it, therefore, the costs will not be included by intendment. The power to remit fines in "criminal actions" is clearly conferred. When exercised, however, it is in derogation of the general rule that all parties fined or amerced shall satisfy the judgment; therefore no intendments will be indulged in favor of a right or favor not made specific by the terms of the grant.

Infinite confusion and disorder and interminable litigation will follow, if this court would by habeas corpus or otherwise examine and determine a contempt of other courts, in the absence of affirmative allegations and proof that the judgments were absolutely void. The general, safe and salutary rule is that punishment for contempt is a matter in the discretion of the court before which it is committed, and its discretion should not be interfered with, unless in cases of flagrant abuse. See, Harwood v. Durham, 91 Amer. Dec., 767.

From time immemorial, the power to punish for contempt has been regarded inherent in all courts of record. The exercise of such power is essential to the very existence of the court, and is a necessary incident to the maintenance of the dignity of the court and conservation of a government of established law and order.

Zeal upon the part of a ministerial officer to promptly execute process placed in his hands is not only gratifying but commendable. In this instance, however, it is clear that the zeal of the relator led him a step too far. This is manifest from the application and the exhibits thereto attached.

*Taylor & Williams* and *George Clark*, for relator.

*Waller S. Baker, J. E. Boynton* and *Mann Trice*, Assistant Attorney-General, for the respondent.

HURT, PRESIDING JUDGE.—The governor of Oklahoma Territory issued to the governor of this State a requisition, in proper form, for J. E. Edwards, who was charged by indictment with the offense of assault with intent to murder in that territory. Lake was named as the extradition agent, for the purpose of carrying Edwards to the territory. Edwards applied to Judge Surratt, judge of the District Court of the Nineteenth District, for a writ of habeas corpus, which was granted,

and, upon a hearing before said judge, was discharged, because of some supposed or real informality in the warrant. (We are not called upon to pass on the action of Judge Surratt in discharging Edwards.) Thereupon Lake made complaint before a justice of the peace, as provided for by Arts. 1024, 1025, Code Crim. Proc., 1879, whereupon the justice issued a warrant for the arrest of Edwards as required by Article 1026. The warrant was executed by the sheriff of McLennan County. (The complaint and warrant were in proper form.) Pending this condition of affairs, Lake applied to the governor of Texas for a corrected warrant to be issued and forwarded to the sheriff of McLennan County. The governor issued the warrant, and directed the same to the sheriff of McLennan County, as requested by Lake. But, before the warrant issued by the governor was received by the sheriff of McLennan County, Edwards again applied to Judge Surratt for a writ of habeas corpus. Counsel for Lake and counsel for Edwards argued the propriety of issuing the writ. While Judge Surratt was considering the matter, the executive warrant reached the sheriff of McLennan County, by virtue of which Edwards was arrested and delivered to Lake, the authorized agent. Lake at once left with Edwards for Oklahoma Territory. Judge Surratt, being informed of this, telegraphed a warrant for the arrest of Lake, and he was arrested and brought back to Waco, McLennan County, and punished for contempt. The judgment is as follows: "Ex parte M. F. Lake. In contempt. February 16, 1897. On this day came on to be heard the answer and showing made by M. F. Lake as to why the judgment nisi entered against him in this court on the 12th day of February, 1897, for contempt of this court, and imposing upon him a fine of $100 and confinement in the county jail of McLennan County for three days, should not be made final; and after hearing said answer, and the evidence offered in connection therewith, the court is of the opinion that said M. F. Lake has not purged himself, but is in contempt of this court, in this: That pending a hearing by the judge of this court of an application for a writ of habeas corpus, which had been presented to the said judge of said court by Frank Edwards, and which was then being heard, and of which proceedings the said Lake had full notice and knowledge, and to which he had made himself party by voluntarily appearing before the said judge in person and by attorneys in said proceedings, and protesting against the issuance of said writ, and while said application, and said Lake's protest thereto, was being argued and submitted by said Lake's attorneys to the said judge of this court, said Lake procured the custody of said Edwards, and forcibly carried him out of the city of Waco and this county, for the purpose and with the intent of avoiding the process of this court, and in contempt and disrespect of this court and its proceedings, and for the purpose of interfering with and hindering this court in the administration of justice; but this court being of the opinion that said Lake did not, at the time he committed said acts, fully realize the enormity of the contempt being committed by him, remits the imprisonment as-

sessed in said nisi judgment, and reduces the fine therein to the sum of fifty dollars. It is therefore ordered, adjudged, and decreed by the court that the State of Texas do have and recover of and from the said M. F. Lake the said sum of fifty dollars, together with all costs of this proceeding, and that he be remanded to the custody of the sheriff of McLennan County until such fine and costs are paid." The Assistant Attorney-General moves to dismiss this writ "because the application and exhibits thereto fail to show that the judgment from which relief is sought is void; that Judge Surratt had jurisdiction to render the same," etc. If Judge Surratt had jurisdiction to render the judgment, then this writ should be dismissed. Was the relator, Lake, guilty of contempt? If so, then this writ should be dismissed. There was no suit before Judge Surratt to which Lake was a party, if the application can be termed a suit. The application did not allege that Edwards was restrained of his liberty by Lake, but by J. W. Baker, the sheriff of McLennan County. Judge Surratt had no jurisdiction over Lake, because he was not a party in any manner whatever. Judge Surratt had no jurisdiction over Lake, because the writ had not been issued, and might never have been issued—in fact, it has never been issued. Lake could not be a party to the application, because he did not have charge of Edwards. Baker, the sheriff, who had Edwards under arrest, was not a party to this proceeding, because the writ had not been issued; and, if it had been issued, unless served upon him, or unless he had been informed of its issuance, he could not have been guilty of contempt, though he might have taken or spirited Edwards from the State to defeat the writ, if it should have been issued. Now, it is certain that Lake disobeyed no order made by Judge Surratt, in any respect whatever. . It is also evident from this record that Judge Surratt had not obtained jurisdiction over the person of Edwards, nor had he issued any writ or warrant for the purpose of obtaining jurisdiction over the person of Edwards. We therefore have a case in which a person is punished for contempt where the jurisdiction of the judge has not attached either to the subject-matter or the person of the supposed contemner. But it is contended that as Lake, by his counsel, appeared before Judge Surratt, and opposed the issuance of the writ of habeas corpus, he was guilty of a contempt in spiriting Edwards from the State without informing the judge of his purpose. It is also contended that his conduct was in bad faith towards the judge; that he was trifling with the judge. Neither Lake nor his counsel had a legal right to appear before Judge Surratt and oppose the issuance of the writ, but the judge heard both counsel for Edwards in favor of, and counsel for Lake against, the issuance of the writ of habeas corpus. Was there anything wrong in this? Certainly not. Did such conduct bind Lake to await the action of the judge upon the application for the writ? If so, how? Pending this application the sheriff of McLennan County received a warrant from the governor of this State commanding him to arrest Edwards and deliver him to Lake, the legally appointed

extradition agent.   This was done, and Lake left immediately for Okla-
homa with Edwards.   Let it be conceded that Lake had departed with
great haste and clandestinely, and that his object was to defeat the writ
if one should be issued.   Would there have been any wrong in this?
Would such conduct have been contempt of the authority of Judge Sur-
ratt?   Under the circumstances it evidently would not have been:   (1)
Because Judge Surratt had obtained no jurisdiction over the person of
Edwards.   (2) Because he had obtained no jurisdiction over the person
of Lake.   (3) Because Lake had violated or disobeyed no order issued
by Judge Surratt, for there was none of any character made in the case;
and there was no order, decree, writ, or any other process in existence,
forbidding him from doing just what he did, nor was there any
order made by the judge for any such writ to issue.   (4) Lake
did what it was his duty to do, what he was commanded to do.   He
was acting under the command of the governor of this State, who had a
perfect right to issue the warrant; and there was no order, no decree,
made by any court of this State, prohibiting him from obeying the writ
of the governor.   In Ex parte Buskirk, 18 C. C. A., 410; 72 Fed. Rep.,
14, the plaintiff filed a complaint against Buskirk and others, praying for
an injunction to restrain the defendant from cutting and hauling, or in
any manner trafficking in, the timber upon the land claimed by the
plaintiff.   This complaint was served upon the defendant.   Now, with
the knowledge of this complaint, and the prayer for the injunction,
Buskirk cut down and felled a large number of trees upon the land in
controversy, for which he was punished for contempt.   He refused to
pay the fine, and was ordered to jail until he should pay the fine.   He
applied to the Circuit Court of Appeals for a writ of habeas corpus, and
obtained it.   Upon a hearing thereof, he was discharged, because no
order for the injunction had ever been made by the court.   This case
is more analogous to the one in hand than any we have found.   We
have found no case authorizing punishment by contempt for such con-
duct as is attributed to Lake, and we believe none can be found.   The
authorities have been closely and exhaustively examined, and the rule
deducible therefrom is that unless the court has jurisdiction of the sup-
posed contemner, or some order, decree, or process, has been resisted or
disobeyed, the court has no jurisdiction to punish for contempt.   Juris-
diction over the party will not confer power to punish for contempt
unless some order, decree, or process has been disobeyed, or the party
is guilty of some act of the nature of malpractice in the case, or has
disobeyed reasonable rules of the court.   But, if there is no jurisdiction
of the party, some order, etc., must be disobeyed—such order or decree
or process as the court had jurisdiction to make.   We are not treating
of cases of contempt which might arise from newspaper articles per-
taining to pending cases, etc.   In addition to what has already been
said, we would refer to some of our statutes which regulate writs of ha-
beas corpus.   We extract as follows from Arts. 167, 168, Code Crim.
Proc., 1895:   When it is made to appear to a judge authorized to grant

a writ of habeas corpus that any one is held in illegal confinement or custody, and there is good reason to believe that he will be carried out of the State, etc., or whenever the writ of habeas corpus has been issued and disregarded, said judge may issue a warrant to any peace officer, or to any person specially named by said judge, directing him to take and bring such person before him to be dealt with according to law. And, where it appears by proof that a person charged with having illegal custody of a prisoner is guilty of an offense against the law, the judge may, in the warrant, order that he be arrested and brought before him, and upon examination he may be committed, discharged, or held to bail as the law and the nature of the case may require. Now, this proceeding apprehends the granting of a writ of habeas corpus, and the bringing of both the party alleged to be restrained and his restrainer before the court to be dealt with, and authorizes the court, upon examination of the person guilty of the false imprisonment, to hold him to bail, or discharge him, as the law and the nature of the case may require. This is one of the remedies afforded by our statute, and indicates how, in the contingency therein stated, the court may deal with a person who has another in illegal custody and proposes to spirit him out of the State. But it will be observed that this exercise of authority is made to depend upon the issuance of the writ of habeas corpus, and the bringing of the parties before the court. Arts. 182 and 184, Code Crim. Proc., 1895, substantially provide that, when a party has been brought before the court on a writ of habeas corpus, the safe keeping of the prisoner pending his examination and hearing is entirely under the direction and authority of the judge or the court issuing the writ. In the last-named article it is provided that: "When service has been made upon a person charged with the illegal custody of another, if he refuses to obey the writ and make the return required by law, or if he refuses to receive the writ, or conceals himself, the court or judge issuing the writ shall issue a warrant directed to any officer or other suitable person willing to execute the same, commanding him to arrest the person charged with the illegal custody or detention of another, and bring him before such court or judge; and when such person shall have been arrested and brought before the court or judge, if he still refuses to return the writ, or does not produce the person in his custody, he shall be committed to prison and remain there until he is willing to obey the writ of habeas corpus, and until he pays all the costs of the proceeding." In this case it is not pretended that any writ of habeas corpus was ever issued by the judge for the prisoner, Edwards; nor is it pretended that Edwards was in the custody of the relator, Lake. Evidently he was in the custody of Baker, the sheriff of McLennan County. Suppose the judge, under the facts shown by the record in this case, had fined Baker; would he have had jurisdiction to impose upon him this punishment anterior to the granting on his part of any writ of habeas corpus? We think not. His power as to Baker would have been marked out and limited by the above statute. He would have been compelled, under the law, to have issued his

writ to Baker, and then, if Baker had refused to obey said writ and make the return required by law, or if he had refused to receive the writ, or had concealed himself to prevent its being served upon him, the court or judge issuing the writ would have had authority to issue a warrant for the arrest of Baker and have him brought before him; and if, after he had been brought before the judge, he had then refused to have obeyed the writ or to have produced Edwards, the court would only have been authorized to commit him to prison, and to confine him there until he produced the body of said Edwards. We hold that the rule, "expressio unius" applies as to this statute, and that this statute gave the judge his sole power in the premises. If, under this statute, he had no power to imprison even Baker, by what process of reasoning was he authorized to imprison Lake, a third party? He did not have jurisdiction to imprison Baker; much less had he authority to fine and imprison the relator. Such action on the part of the judge would have been arbitrary as to Baker, and would be much more so as to the relator. No order or process had been issued in this case which would have given the court jurisdiction of Baker, and the court could make no subsequent order punishing him for contempt unless he was at the time guilty of some contempt. That is, as we understand it, contempts are divided into two classes: contempts in the presence of the court (that is, in facie curiæ), or constructive contempts (that is, contempts committed outside of the court; acts violative of some decree or order of the court). It is not pretended that the relator, in this instance, was guilty of a contempt in the face of the court. Then the jurisdiction of the court can only be invoked to punish him for a constructive contempt. To be guilty of a constructive contempt, there must have existed, at the time, some order or some writ which he violated. In re Chiles, 22 Wall., 157, which was an attempt to punish Chiles for disobedience of an order of court at the time having no existence, the court uses the following language: "The petition, for the present rule on Chiles, asks, that he may be ordered, by a proper instrument in writing, to convey and transfer to the State of Texas all rights, titles, and interest which he appears or pretends to have in said bonds; and counsel, in oral argument, says he should be imprisoned for contempt until he complies with this order. But, the obvious answer to this is, that no such order or decree has been made, and the defendant can be guilty of no contempt in not doing this until he has been ordered to do it and he is aware of it. To make an order now, and then punish for contempt or disregard of it before it was made, is ex post facto legislation and judicial enforcement at the same moment." And see, also, Cosby v. Superior Court of Los Angeles County, 110 Cal., 45, 42 Pac. Rep., 460. From no point of view in which this question can be be considered can the authority of the court to punish the relator for contempt be maintained. In the view we have taken, it is unnecessary to discuss the power of the executive to grant a pardon, or the imposition of costs by the judge who tried this case as a part of the punishment for contempt, and we pretermit any observation in regard

thereto. For the reasons stated, we hold that the attempt of the District Judge to punish the relator for contempt was null and void, because he never acquired jurisdiction of either the subject matter or the person of the relator. The relator is therefore ordered discharged.

*Relator Ordered Discharged.*