(104 So. 561)

## ROBERTSON v. STATE. (6 Div. 643.)

(Court of Appeals of Alabama. Dec. 16, 1924. Rehearing Denied March 17, 1925.)

**1. Contempt &#9750;&#8658;40—Contempt proceeding raises issue outside pending cause.**

A contempt proceeding raises issue outside of pending cause, and, while it may be collateral to main cause, it is not part thereof.

**2. Contempt &#9750;&#8658;40—"Contempt" is in nature of special proceeding and of criminal nature.**

A "contempt" proceeding is in nature of a special proceeding, collateral to but independent of cause in which contempt arises, and of a criminal nature, citing Words and Phrases, Contempt.

**3. Divorce &#9750;&#8658;269(3)—Proceeding for contempt to punish defendant for failure to comply with alimony decree is sui generis, collateral to main cause.**

Proceeding for contempt to punish defendant for failure to comply with alimony decree is sui generis, collateral to but independent of the cause in which contempt arose, and while technically classified as civil contempt, it is quasi criminal.

**4. Courts &#9750;&#8658;52, 123—No chancery court in Alabama, the jurisdiction being added to circuit courts.**

There is no chancery court in Alabama, such courts having been abolished, and equity or chancery jurisdiction, under Code 1923, § 6464 et seq., being added to or conferred on circuit courts.

**5. Contempt &#9750;&#8658;40—Punishment for contempt by circuit judge in equity is not necessarily exercise of equity jurisdiction.**

While punishment for contempt was imposed by judge of circuit court in equity, it does not necessarily follow that, in so doing, he exercised equity jurisdiction, or that contempt proceeding was equitable in character.

**6. Contempt &#9750;&#8658;30—Power to punish for contempt inherent in all courts of record at common law.**

Power to punish for contempt is inherent in all courts of record at common law.

**7. Contempt &#9750;&#8658;30—Power to punish for contempt cannot be taken away or abridged.**

Inherent power of courts of record at common law to punish for contempt cannot be taken away or abridged.

**8. Contempt &#9750;&#8658;40—Circuit judge in equity in contempt proceeding does not necessarily exercise chancery jurisdiction.**

Circuit judge, sitting in equity, in contempt proceeding does not exercise, strictly speaking, chancery jurisdiction, but exercises special power inherent in all courts of record.

**9. Contempt &#9750;&#8658;44—Criminal contempts punished by courts of chancery or courts having no criminal jurisdiction.**

Criminal contempts may be punished by courts of chancery or other courts having no criminal jurisdiction.

**10. Contempt &#9750;&#8658;30—Inherent power to punish for contempt is same in all courts of record.**

Inherent power of court to punish for contempt is the same, in absence of statute, in all courts of record, whether court be court of law or of equity.

**11. Contempt &#9750;&#8658;66(1)—Review of inherent power of court of record to punish for contempt is not review of exercise of equity jurisdiction.**

A review of the exercise of special inherent power of court of record to punish for contempt is not review of exercise of equity jurisdiction.

**12. Habeas corpus &#9750;&#8658;113(2)—Supreme Court has final appellate jurisdiction over habeas corpus.**

In view of Const. 1901, § 140, the Court of Appeals of Alabama, under Code 1923, §§ 7308, 7309, 7312, 7314, is given final appellate jurisdiction over habeas corpus, it mattering not in what court the proceedings originated.

**13. Habeas corpus &#9750;&#8658;41—Authority to issue writ of habeas corpus carries with it authority to determine all questions made by writ and return.**

Authority of Court of Appeals, under Code 1923, §§ 7308, 7309, 7312, 7314, to issue writ of habeas corpus, carries with it authority to determine all questions made by writ and return.

<hr>

&#9750;&#8658;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

14. **Judgment** ☞489—**Judgment void for want of jurisdiction may be collaterally impeached.**

Judgment void for want of jurisdiction may be collaterally impeached by any person interested wherever it is brought in question.

15. **Habeas corpus** ☞22(2), 95—**Supreme Court may determine question of validity of decree under which petitioner in contempt is restrained of liberty.**

Habeas corpus is appropriate way of raising validity of decree in imposing punishment for contempt, and the Court of Appeals, under authority of Code 1923, §§ 7308, 7309, 7312, 7314, may determine validity of decree under which petitioner is restrained of liberty, and in doing so it exercises no equity jurisdiction.

16. **Divorce** ☞269(10) — **Proceedings in contempt begun by affidavit.**

Proceedings in contempt for noncompliance with decree for alimony must be begun by affidavit.

17. **Contempt** ☞54(4)—**Affidavit in contempt proceeding is accusation on which accused is tried for criminal offense.**

Where contempt proceeding is begun by affidavit, affidavit is not only foundation for issuing order to show cause, but also constitutes accusation on which accused is to be tried for criminal offense.

18. **Divorce** ☞269(10)—**Jurisdiction in contempt proceeding, invoked by affidavit or sworn petition.**

In order to invoke jurisdiction of circuit court in contempt proceeding for failure to comply with alimony decree, affidavit or sworn petition must be presented to trial judge before jurisdiction of circuit court can be invoked.

19. **Divorce** ☞269(10)—**Affidavit to best of affiant's knowledge, information, and belief held insufficient.**

Affidavit to petition for order that defendant in divorce proceeding appear and show cause why he should not be imprisoned for contempt because of refusal to make payments specified in decree, in which affiant stated that facts in motion were true according to best of her knowledge, information, and belief, *held* insufficient, it being insufficient for purpose of evidence.

20. **Contempt** ☞54(6)—**Mere filing of affidavit in contempt proceeding, held insufficient.**

Mere filing of affidavit in contempt proceeding is not sufficient, as affidavit must be laid before court or judge for judicial consideration and action.

21. **Divorce** ☞269(10)—**Applicant must appear before court, and make prima facie showing by verified petition that contempt has probably been committed.**

While there is no statute in Alabama requiring petitioner for issuance of process to respondent in alimony proceeding, requiring him to appear and show cause why he should not be adjudged in contempt, to make prima facie case of contempt, one should not be required to appear before court until applicant makes prima facie showing by verified petition that contempt has probably been committed.

22. **Contempt** ☞61(1)—**Affidavit in contempt, proceeding is evidentiary.**

When affidavit is filed in contempt proceeding, judge must decide whether prima facie case of contempt is made, and, if so, what steps to take to punish it, affidavit being evidentiary and its purpose to advise the judicial mind.

23. **Contempt** ☞54(4)—**Affidavit becomes basis of issuance of process.**

Where affidavit shows prima facie case of contempt committed, it becomes basis of issuance of process, it being not only evidence of fact that decree had not been complied with, but is criminal accusation against accused, and on which he is to be tried, and, if found guilty, punished as provided.

24. **Habeas corpus** ☞30(1)—**Generally, when court has jurisdiction of person of defendant and subject-matter out of which alleged contempt arises, habeas corpus will not apply.**

Generally, where court has jurisdiction of defendant's person and of subject-matter out of which alleged contempt arises, he is not entitled to relief by habeas corpus.

25. **Contempt** ☞66(7)—**Generally, reviewing court in contempt proceedings will not review facts.**

Generally, a reviewing court in contempt proceedings will not consider pure questions of fact, but may determine whether alleged contemptuous conduct constitutes contempt in law.

26. **Divorce** ☞269(11)—**Facts held to show defendant in contempt proceeding had no funds from which to comply with alimony decree.**

In contempt proceeding for defendant's failure to comply with alimony decree, facts *held* to disclose that defendant had no funds from which to comply with decree.

27. **Divorce** ☞269(11)—**Complainant in contempt proceeding must show beyond reasonable doubt that respondent was financially able to comply with decree.**

In contempt proceeding for husband's alleged failure to comply with alimony order, it was incumbent on complainant to show beyond reasonable doubt that he was financially able to comply with decree.

28. **Divorce** ☞269(1, 12)—**Mere failure to pay money is not contempt; respondent must have opportunity to be heard.**

In contempt proceeding for husband's alleged failure to comply with alimony decree, there must be something wrong beyond mere failure to pay, and, before he can be convicted and punished, he must have opportunity to be heard in his own explanation.

29. **Divorce** ☞269(9)—**Lack of ability to pay is defense.**

In civil contempt proceeding for failure to comply with alimony order, object of which was to coerce payment, lack of ability to pay by de-

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

fendant was complete defense against enforcing payment by imprisonment.

**30. Habeas corpus** ⟜⟜92(1)—**When judge required to inquire into cause of restraint stated.**

In view of Code 1923, § 4312, when sworn petition for habeas corpus is presented to circuit judge, alleging illegal restraint of liberty, it is his duty to inquire into cause of restraint, unless petition or documents annexed thereto show beyond question that restraint was lawful.

Appeal from Circuit Court, Jefferson County; John Denson, Judge.

Petition of Edwin A. Robertson for writ of habeas corpus. From a judgment denying the writ, petitioner appeals and brings an original petition for the writ. Writ granted, petitioner discharged, judgment reversed, and cause remanded.

Horace C. Wilkinson and C. W. Greer, both of Birmingham, for petitioner.

The contempt must be brought before the court on affidavits of persons who witnessed it, or had knowledge of it; the affidavit is jurisdictional. Brown on Jurisdiction, § 116; Carl-Lee v. State, 102 Ark. 122, 143 S. W. 909; Ex parte Duncan, 78 Tex. Cr. R. 447, 182 S. W. 313, 2 A. L. R. 222; Ex. parte Biggers, 85 Fla. 322, 95 So. 763; Ex parte Earman, 85 Fla. 297, 95 So. 755, 31 A. L. R. 1226; 13 C. J. 64; 6 R. C. L. 531; Black on Judgments, § 241. The affidavit in this case is wholly insufficient to support a judgment, Ex parte Duncan, supra; People v. Murphy, 1 Daly (N. Y.) 462; 6 R. C. L. 531; Belangee v. State, 97 Neb. 184, 149 N. W. 415; Globe Co. v. Thacher, 87 Ala. 466, 6 So. 366; Burgess v. Martin, 111 Ala. 656, 20 So. 506; Long v. Pocahontas Coal Co., 117 Ala. 587, 23 So. 526; State v. Newton, 16 N. D. 151, 112 N. W. 52, 14 Ann. Cas. 1035; Kirby v. Chicago, etc., 51 Colo. 82, 116 P. 150; Woodward v. State, 173 Ala. 7, 55 So. 506; Schilcer v. Brock, 124 Ala. 626, 27 So. 473. Inability to comply with the alimony decree was a complete defense. Snook v. Snook, 110 Wash. 310, 188 P. 502, 9 A. L. R. 262; McKissack v. Voorhees & Co., 119 Ala. 101, 24 So. 523; Adair Bros. v. Gilmore, 106 Ala. 436, 17 So. 544. The Court of Appeals has jurisdiction in this case. Phelps v. McLeod, 17 Ala. App. 480, 86 So. 150; Code 1923, § 7312.

Black & Harris, of Birmingham, for the State.

Brief of counsel on original hearng did not reach the Reporter; the brief noted below is in support of motion for rehearing.

An order made to coerce payment of alimony is not separate and distinct from the original cause. Smith v. Smith, 81 W. Va. 761, 95 S. E. 199, 8 A. L. R. 1149. The Court of Appeals has no jurisdiction over habeas corpus proceedings arising out of matters over which it has not final appellate jurisdiction. Code 1923, § 7312. An affidavit made on information and belief is sufficient to authorize the issuing of notice to show cause. Worthen v. State, 189 Ala. 395, 66 So. 686; Sellers v. State, 162 Ala. 35, 50 So. 340; Hughes v. Terr, 10 Ariz. 119, 85 P. 1058, 6 L. R. A. (N. S.) 572; In re Acock, 84 Cal. 50, 23 So. 1029; Jordan v. Court, 69 Iowa, 177, 28 N. W. 548; Emery v. State, 78 Neb. 547, 111 N. W. 374, 9 L. R. A. (N. S.) 1124. If affidavit was not properly made, it is a mere irregularity, which can be waived. Sona v. Aluminum Co., 214 F. 936, 131 C. C. A. 232; Aaron v. U. S., 155 F. 833, 84 C. C. A. 67; In re Odum, 133 N. C. 250, 45 S. E. 569. There must be total want or excess of jurisdiction for habeas corpus to lie. Ex parte Brown, 63 Ala. 187; Ex parte Davis, 95 Ala. 11, 11 So. 308; Ex parte Pearce, 111 Ala. 103, 20 So. 343; Ex parte Roberson, 123 Ala. 104, 26 So. 645, 82 Am. St. Rep. 107; Ex parte Dickens, 162 Ala. 272, 50 So. 218; 26 C. J. 98; People v. Orser, 12 How. Prac. (N. Y.) 550. Where there is ability to obey the court's order, or evidence shows disposition of property, or fraudulent conduct, to avoid obedience, contempt exists. Adair Bros. v. Gilmore, 106 Ala. 436, 17 So. 544; Carr v. State, 106 Ala. 35, 17 So. 350, 34 L. R. A. 634, 54 Am. St. Rep. 17; Webb v. Webb, 140 Ala. 262, 37 So. 96, 103 Am. St. Rep. 30.

BRICKEN, P. J. At the time of the submission in this court of this cause, the points of decision involved were fully and ably argued by counsel for petitioner and for complainant. These questions have been elaborately briefed by counsel for petitioner, but no brief has been filed, contra. We deem it proper to first make a full statement of the case as shown by the record.

Mrs. Robertson, who will be hereafter referred to as the complainant, filed a bill on the equity side of the circuit court of Jefferson county, Ala., seeking an allowance for maintenance and support from her husband, Edwin A. Robertson, who will be referred to as the petitioner. The respondent filed an answer, and a cross-bill praying for a divorce on a statutory ground.

On July 15, 1924, the circuit judge, sitting in equity, entered a decree dismissing the cross-bill out of court "without prejudice," and granting the complainant relief as prayed for in her bill of complaint as follows:

"That the said Edwin A. Robertson, the respondent and cross-complainant, be and he is hereby ordered to pay over to the said Mrs. Edwin A. Robertson the sum of $680 as maintenance pendente lite from December, 1923, to the date hereof, and beginning on the 1st day

⟜⟜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of August, 1924, and on the 1st day of each month thereafter, the sum of $85 for her support and maintenance.

"Second. In addition to the above, the said Edwin A. Robertson be and he is hereby ordered and required to pay into the registry of this court, as a part of the costs in this cause, the sum of $500 for the use and benefit of the solicitors of record for the complainant."

On the 26th day of September, 1924, complainant presented a petition to the circuit judge who rendered the decree, praying that the petitioner here be ordered to appear and show cause why he should not be imprisoned for a contempt of the court because of an alleged refusal on his part to make the payments specified in the decree. The affidavit annexed to the petition is set out in full further on in the opinion.

On the same day the circuit judge ordered the petitioner here to appear on a day designated, to show cause, "If any he has, why he should not be adjudged in and punished for contempt of this court," following which the register issued a rule nisi that was duly served on petitioner, commanding him to appear and show cause as directed in the order above referred to.

Petitioner appeared on the designated day, and, by motion, sought to have the court vacate and set aside its order commanding the petitioner to appear and show cause why he should not be adjudged in contempt, and to quash the rule nisi, on the ground, to state it generally, that the jurisdiction of the court had never been invoked, because, as was stated in the motion, the affidavit accompanying the petition is wholly insufficient to support the citation, directed to the respondent, commanding him to appear and show cause why he should not be adjudged in contempt of the court.

The motion being overruled, other motions not necessary to be here noticed were made, and, upon each of them being overruled, petitioner answered under oath. The first paragraph of petitioner's answer is as follows:

"(1) That he should not be adjudged for and as in contempt of this honorable court because he is not in contempt of court; that he had at all times had the highest respect for this honorable court and its decrees, and has endeavored in good faith to abide by and perform any and all decrees of this honorable court that in any wise affect this respondent, and will continue to do so, and is ready and willing to abide by any decree of this court to the extent of this respondent's ability."

Then follows a detailed statement of petitioner's financial condition at the time of the rendition of the decree, with an explanation of his sources of income, and events that occured subsequent to the rendition of the decree, that will be more fully referred to during the course of this opinion. In his answer petitioner admitted that he had failed to comply with the decree:

"But he respectfully shows unto the court that he was and is wholly without means to pay said decree; that he did not have at the time the decree was rendered, nor since said time, any money or means with which to satisfy said decree, and that he had no money or property that he could handle with which to do so, and has had none since said decree was rendered; that he had no means of paying same without borrowing money, and that his property was in such condition, as will be hereinafter explained, that it was impossible to raise money on the same for the purpose of paying said decree."

The evidence was heard orally. But one witness was examined, the petitioner himself. The ledger sheets of his two bank accounts and his check stubs were introduced by complainant as exhibits to his testimony, and appear in the record. After argument of counsel, the circuit judge adjudged petitioner in contempt of court; omitting the preliminary recitals, the decree was as follows:

It is therefor ordered, adjudged, and decreed by the court that the respondent, Edwin A. Robertson, be and he is hereby held and decreed to be guilty of contempt of this court, by willfully failing and refusing and declining to comply with the decree of this court rendered July 15, 1924, as above set forth, and the said Edwin A. Robertson is hereby ordered committed to the county jail of Jefferson county, Ala., for five days, unless the said Edwin A. Robertson purges himself of said contempt by paying said sums as hereinabove set out into the registry of this court, and the sheriff of Jefferson county, Ala., is hereby ordered and directed to commit the said Edwin A. Robertson in accordance with this decree, and should the said respondent fail to purge himself of said contempt by paying said sums, the said sheriff of Jefferson county is ordered to again produce the body of the said Edwin A. Robertson before this court at the expiration of the said five days' commitment.

"Done and ordered this the 4th day of October, 1924. Wm. M. Walker,
"Circuit Judge in Equity."

Petitioner immediately presented a petition for a writ of habeas corpus to Hon. John Denson, another one of the judges of the circuit court of Jefferson county, Ala., who declined to issue the writ, and indorsed on the petition the following order:

"The foregoing petition being presented to the undersigned judge of the circuit court of Jefferson county, Ala., on consideration of the same, I am of the opinion that the petitioner is not entitled to the benefit of the writ, and that I have no jurisdiction to issue it.

"It is therefore ordered, adjudged, and decreed that the petition for writ of habeas corpus be and it is hereby denied, and petitioner excepts.

"This 4th day of October, 1924.
"John Denson, Circuit Judge."

Petitioner appealed from this order, and filed the transcript of the record in this court the same day; petitioner subsequently presented a petition to this court for a writ of

habeas corpus, with a prayer for bail pending a hearing on the petition and the appeal. This court ordered the writ to issue and petitioner admitted to bail pending a hearing.

A properly certified transcript of the contempt proceedings in the court below is made a part of the sheriff's return, and that officer answers that, by virtue of these proceedings and no other, this petitioner was being restrained of his liberty. The petitioner here seeks to be discharged (1) because it is claimed the affidavit annexed to the petition for the rule nisi was insufficient to invoke the jurisdiction of the court below; (2) because it is claimed all the evidence showed no contempt had been committed.

The complainant resists the discharge (1) because it is claimed the court below had authority to cite and punish petitioner for contempt without any verified pleading being filed in the first instance; (2) because it is claimed the affidavit is sufficient—at most "irregular"; (3) because it is claimed that this court is without jurisdiction to review the court below.

We will dispose of the question of this court's authority or jurisdiction first, although the question of jurisdiction is only alluded to in argument, and not raised by any formal pleading.

[1, 2] A contempt proceeding raises an issue outside of the pending cause. While in some cases, it may, in a sense, be collateral to the main cause, it is not a part of that cause. It is a separate, independent proceeding, governed by well-established rules of procedure, and has no proper place in the record of the main cause. Alabama Power Co. v. Adams et al., 191 Ala. 54, 67 So. 838; Board of Revenue of Covington County v. Merrill, 193 Ala. 521, 542, 68 So. 971. It is in the nature of a special proceeding, collateral to but independent of the cause in which the contempt arises and of a criminal nature. 7 Words and Phrases, p. 6588; 13 C. J. p. 7.

In Ex parte Hardy, 68 Ala. 315, the Supreme Court of this state said:

"It is often said that contempts of court are in the nature of a 'special criminal offense,' and the proceedings for their punishment are in the nature of a criminal procedure. In re Williamson, 26 Pa. 9, 67 Am. Dec. 374. However this may be, punishments for contempt have a double aspect: First, to vindicate the dignity of the court from disrespect exhibited to it, or its orders. Secondly, to compel the performance of some order or decree of the court, which it is in the power of the party to perform, and which he, without sufficient excuse, refuses to obey. In re Chiles, 22 Wall. 158, 22 L. Ed. 819."

In Ex parte Dickens, 162 Ala. 272, 50 So. 218, our Supreme Court approved a further classification as follows:

" 'A "civil contempt" consists in failing to do something ordered to be done by a court in a civil action, for the benefit of the opposing party therein.' 9 Cyc. 6. While there have been some opinions to the contrary, the weight of authority, as well as the reason of the case, is that a proceeding for contempt is not a part of the main case, before the court, but is collateral to it, a proceeding in itself, and consequently would not come up for consideration on an appeal in the main case. 9 Cyc. 33; Hogan v. Alston, 9 Ala. 627."

In 13 C. J. page 6, a civil contempt is defined as follows:

"Civil contempt consists in failing to do something ordered to be done by court in a civil action for the benefit of the opposing party therein, and is therefore, not an offense against the dignity of the court, but against the party in whose behalf the violated order is made. If, however, the contempt consists of doing a forbidden act, injurious to the opposite party, the contempt may be considered criminal."

[3] We therefore conclude that a proceeding for contempt to punish a respondent for failure to comply with a decree providing for the payment of alimony is sui generis, collateral to but independent of, the cause in which the contempt arises, and while technically classified as a civil contempt, it is quasi criminal, in which the elements of both a civil and criminal proceeding appear.

[4, 5] Having determined that the proceeding is of that character, it is now incumbent upon us to determine whether or not in a limited review of a proceeding of that character by habeas corpus, this court is called upon to review a decree in chancery. There is no chancery court in this state. Chancery courts have been abolished and equity or chancery jurisdiction added to, or conferred upon, circuit courts. Code 1923, § 6464 et seq. While the punishment for contempt was imposed by a judge of the circuit court, sitting in equity, it does not necessarily follow that, in so doing, he was exercising equity jurisdiction, or that the contempt proceeding was equitable in character.

[6, 7] The power to punish for contempt is inherent in all courts of record at common law. Ex parte Dickens, 162 Ala. 272, 50 So. 218; Coleman v. Roberts, 113 Ala. 323, 21 So. 449, 36 L. R. A. 84, 59 Am. St. Rep. 111; Ex parte Hamilton, 51 Ala. 66; Powell v. State, 48 Ala. 154; Easton v. State, 39 Ala. 551, 87 Am. Dec. 49; Gates v. McDaniel, 3 Port. 356. This inherent power has been held to exist with reference to constructive, as well as direct, contempts. 13 C. J. page 47. This power cannot be taken away or abridged. It is essential to the due administration of justice. 9 Cyc. 26. The power to punish for contempt is inherent in a court of equity, not because of its equity jurisdiction, but because, being a court of record, and of superior jurisdiction, it was recognized at an early date that it had the same power as courts of law to punish for contempt. 13 C. J. 51.

[8] The character of the court, that is to say, it being a court of record, and not its

function, is responsible for this inherent power. A circuit judge, therefore, sitting in equity in a contempt proceeding, is not exercising, strictly speaking, chancery jurisdiction; he is exercising the special power that is inherent in all courts of record. The proceeding itself is not equitable in character, but special and quasi criminal. The Supreme Court of the United States has said that contempts are neither wholly civil nor altogether criminal. Gompers v. Buck's Stove & Range Co., 221 U. S. 418, 31 S. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874.

[9-11] Criminal contempts may be punished by courts of chancery or other courts having no criminal jurisdiction. Merchants' Stock & Grain Co. et al. v. Board of Trade, etc., 201 F. 20, 120 C. C. A. 582. This well-settled rule illustrates and emphasizes the special power and jurisdiction exercised by a court in contempt proceedings. The contempt proceeding does not necessarily partake of the nature of the main case. The jurisdiction invoked in the main case is not the jurisdiction that attaches in the contempt proceeding. The power that is invoked, the authority that acts, the jurisdiction that is appealed to, is that inherent power, authority, and jurisdiction of every court of record to vindicate its dignity, compel compliance with its lawful orders, and protect its process. Ex parte Dickens, 162 Ala. 272-280, 50 So. 218. That inherent power is the same, in absence of statutory regulation, in all courts of record, whether the court be a court of law or a court of equity. A review of the exercise of that special inherent power is not a review of the exercise of equity jurisdiction.

[12] In the statute providing for the creation of this court, its jurisdiction is defined as follows:

"7308. Court of Appeals Created.—A Court of Appeals, composed of three judges possessing the qualifications of the Supreme Court judges, is created and established.

"7309. Jurisdiction of Court.—Said court, except as to actions involving the title to or possession of lands and except as herein otherwise provided shall have final appellate jurisdiction, coextensive with the state of all suits at law where the amount involved, exclusive of interests and costs does not exceed the sum of one thousand dollars, *of all* misdemeanors, including the violation of town and city ordinances, bastardy, habeas corpus and all felonies, where the punishment has been fixed at twenty years or under. Where there is a recovery in the court below of any amount other than costs, the amount of such recovery shall be ·deemed to be the amount involved, otherwise the amount claimed shall be deemed to be the amount involved, except that in actions of detinue the alternate value of the property as found by the court or jury shall be deemed to be the amount involved. [Italics supplied]. * * *

"7312. Original Jurisdiction of ·Quo Warranto, Mandamus and Injunction; Makes Rules, etc.—The said Court of Appeals shall have and exercise original jurisdiction in the issuance and determination of writs of quo warranto and mandamus in relation to matters in which said court has appellate jurisdiction. It shall *have authority to issue writs of injunction, habeas corpus and such other remedial and original writs as are necessary to give it a general superintendence and control of jurisdiction inferior to it and in matters over which it has final appellate jurisdiction;* to establish rules of practice in such court; to punish for contempts by the infliction of a fine as high as one hundred dollars, and imprisonment not exceeding ten days, one or both, and to exercise such other powers as may be given to such court by law. [Italics supplied]. * * *

"7314. Authority to Issue Writs.—The judges of said court shall each have authority to issue writs of certiorari and supersedeas to all inferior courts, and writs of injunction, subject to the limitations prescribed by law."

A reference to these provisions shows that this court is given final appellate jurisdiction over habeas corpus, and the authority to issue writs of habeas corpus, and such other remedial and original writs as are necessary to give it general superintendence and control of jurisdiction inferior to it, and in matters over which it has final appellate jurisdiction, and to exercise such other power as may be given to such court by law.

It does not appear that there was any legislative intent to circumscribe the authority of this court in habeas corpus matters. Its appellate jurisdiction to hear and determine habeas corpus is unlimited by the statute itself. It matters not in what court the habeas corpus proceedings originated, this court is given the power to review such proceedings on appeal.

In Phelps v. McLeod, 17 Ala. App. 480, 86 So. 150, this court was called on to pass on an appeal in a habeas corpus coming from the equity side of the docket of the circuit court, and the question of this court's jurisdiction was raised. In that case the question was submitted to the Supreme Court, and that court answered as follows:

"Per Curiam. This cause belongs in the Court of Appeals. Montgomery v. Hughes, 4 Ala. App. 245, 58 So. 113. All Justices concurring."

That decision is considered as having fixed the jurisdiction of this court in habeas corpus matters coming before it for review.

While the statute investing this court with original jurisdiction in habeas corpus is not as clear as it might have been, we are of the opinion that a careful reading of it does not disclose a legislative intent to circumscribe the jurisdiction there conferred. The statute reads that "this court shall have authority to issue writs of habeas corpus." We do not consider that authority to be limited to such cases "as are necessary to give this court general superintendence and control of jurisdiction inferior to it, and in matters over which it has final appellate jurisdiction."

In State ex rel. Attorney General v. Speake, 187 Ala. 427, 65 So. 840, Chief Justice Anderson, speaking for the Supreme Court of Alabama, said:

"The writ of habeas corpus has been defined, or rather described as 'that legal process which is employed for the summary vindication of the right of personal liberty when illegally restrained.'—Hurd on Habeas Corpus, 129. It is a common law writ, employed by the courts of common law, of *superior jurisdiction,*. and the court of chancery, before the enactment of statutes regulating its use. * * *

"*A superior court, in the exercise of its common law jurisdiction, may employ the writ of habeas corpus to bring before it the body of a person illegally imprisoned,* and, if the imprisonment is under legal process, or the judgment or sentence of a court of inferior jurisdiction, may' award a writ of certiorari, removing the record. The proceeding is then in its nature appellate, and there may be an inquiry into the regularity of the process, judgment, or sentence. When, however, the writ is sued out under the statute, and the jurisdiction conferred by the statute on a single magistrate is to be exercised in vacation, the proceeding is not in its nature appellate, but rather original, and the validity of the process, judgment, or sentence is drawn in question collaterally. The general principle, then, prevails that, when a record or process is collaterally assailed, it must be for illegality, not for error or irregularity." (Italics supplied.)

The language of the statute conferring original jurisdiction on this court to issue writs of habeas corpus is identical with the language of section 140 of the Constitution conferring original jurisdiction on the Supreme Court of Alabama in such cases, with the exception of the phrase "and in matters over which it has final appellate jurisdiction." We do not understand that this additional phrase limits this court in habeas corpus matters to cases over which it has final appellate jurisdiction. It would be remarkably anomalous for this court to hold that the Legislature intended that it should have authority to issue the writ in some cases and that it should not have authority to issue the writ in other cases, depending upon what side of the docket the conviction for contempt was entered.

[13] The authority to issue the writ carries with it the authority to determine all the questions made by the writ and the return. As was pointed out in the Speake Case, supra, the attack by habeas corpus on a contempt proceeding is a collateral attack; the court is limited in such proceeding to questions of illegality, and is not concerned with error or irregularity. The writ is issued, not to the circuit court sitting in equity, but to the person detaining the body. If the custodian alleges that the detention was by virtue of a decree of the court, the tribunal from whence the writ proceeds must necessarily have jurisdiction to determine for itself the validity vel non of the decree by virtue of which the petitioner is detained, although such tribunal may have no final appellate jurisdiction over the particular court that imposed the sentence for contempt.

[14] This is well illustrated in the case of State v. Fuller, 147 Ala. 164, 41 So. 990. In that case Fuller was indicted for murder in the first degree in the circuit court of Cleburne county, and after a number of trials was convicted and sentenced for 30 years in the penitentiary, and at the time of issuing out the writ, was imprisoned by Fields as warden of said penitentiary. Conceiving his conviction to be illegal, Fuller filed a petition with the chancellor of the Northeast chancery division, which embraces the county of Elmore. The chancellor granted the writ, and made it returnable before him at Anniston. The chancellor, of course, had no jurisdiction, superintendence, or control of the circuit court that sentenced the petitioner for murder. Neither did he have any final appellate jurisdiction in such cases, but, being invested by the statute with the authority to issue writs of habeas corpus, he was necessarily empowered with the authority to pass on and adjudicate the validity of the judgment under which the petitioner was detained, notwithstanding a lack of jurisdiction over the court that rendered the judgment. A judgment void for want of jurisdiction may be collaterally impeached by any person interested wherever it is brought in question. Ex parte Lange, 18 Wall. 163, 21 L. Ed. 872.

[15] If habeas corpus be the appropriate way of raising the validity of a decree imposing punishment for contempt, then, by virtue of the authority vested in this court to issue this benign common-law writ, it may determine the question of the validity' of the decree under which petitioner is restrained of his liberty. In doing so this court exercises no equity jurisdiction. It reviews no decree in equity. It exercises the common-law power of courts of record to inquire into the cause of imprisonment, when properly appealed to, and to remand or discharge, according to the validity or invalidity of the proceedings.

The Supreme Court has affirmed that habeas corpus is the appropriate remedy for the release of a person restrained of his liberty under a decree adjudging him in contempt in cases where there is a want or excess of jurisdiction. In Ex parte Hardy, 68 Ala. 315, the court said:

"It cannot be denied, that every court is the exclusive judge of a contempt committed in its presence or against its process, and that the exercise of such power by a court of competent jurisdiction cannot be revised on error, nor assailed collaterally by a resort to a writ of habeas corpus. In re' Cooper, 32 Vt. 253; People v. Sturtevant, 9 N. Y. (5 Seld.) 263; Ex parte Adams, 25 Miss. 883, 59 Am. Dec. 234; Ex parte Henry Sam, 51 Ala. 34.

"But where there is either a want, or excess of jurisdiction in the committing court, a writ of habeas corpus is then the appropriate remedy for the release of the prisoner."

The alleged contempt in this case was not committed in the presence of the court, or against its process. We therefore hold that this court has jurisdiction to pass upon the validity of the decree under which petitioner is restrained of his liberty in a habeas corpus proceeding, to the extent of determining whether the court below had jurisdiction in this particular case.

[16] We take it that it is now well settled that proceedings of this character must be begun by affidavit. In Encyclopedia of Pleading and Practice, vol. 4, p. 779, it is said that:

"By Affidavit.—a. Its Necessity. The almost universal method by which contempt proceedings are begun is by an affidavit, and an examination of the authorities will generally disclose that in all contempt proceedings, save for such as are committed in the court's immediate presence, an affidavit is essential."

In volume 5 of the Standard Encyclopædia of Procedure, p. 390, the rule supported by numerous authorities is stated thus:

"Indirect or Constructive Contempt. If the proceedings be for a civil, indirect or constructive criminal contempt, the offender must, as a rule, be brought before the court by a rule or some other sufficient process based on affidavit, it not being necessary that the application be instituted by petition. Although if the contemner be present in court, it is held that the court may dispense with the issuance of a rule.

"It has been held that a proceeding to punish for other than direct contempt is a distinct and independent proceeding, as much so as a new suit, and necessitates the giving of notice of all proceedings."

In his work on Marriage and Divorce, in speaking of proceedings to enforce the payment of alimony, Mr. Schouler in vol. 2, section 1840, says:

"Proceedings in contempt should usually be begun only after demand, and personal service must be made to give the husband proper notice of the proceedings, as summary action cannot be taken."

He there cites a number of authorities sustaining the rule, among which is In re McCarty, 154 Cal. 534, 98 P. 540, in which the reason for the rule is satisfactorily given by the Supreme Court of California, as follows:

"The order did not require payment in court but payment outside of it. The court could have no knowledge of the disobedience of its order save upon an affidavit showing the fact of nonpayment. In such a case, where the contempt is a constructive one, in order to invest the court with jurisdiction to proceed to punish for it, it is essentially a prerequisite to the exercise of such jurisdiction that an affidavit setting forth the fact of non compliance with the order should have been presented to the court."

In Ex parte John T. Duncan, 78 Tex. Cr. R. 447, 182 S. W. 313, 2 A. L. R. 222, an attorney was cited for contempt because of certain language used in a brief filed in a district court that was not in session when the brief was filed. A member of the bar addressed a petition to the judge calling his attention to the language used in the brief, and the judge thereupon ordered process to issue, summoning the attorney to appear before him and show cause why he should not be adjudged to be guilty of contempt in making use of such language. The Criminal Court of Appeals stated the rule to be that:

"The overwhelming weight of authority in this country sustains the proposition that the affidavit upon which the proceeding for a constructive contempt is based must state facts which, if established, would constitute the offense, and that, if the allegations of the affidavit are not sufficient in this respect, the court is without jurisdiction to proceed."

In the case above referred to, the court closes its opinion with this language:

"As no affidavit, nor petition sworn to, was filed in this case, the jurisdiction of the court was not properly invoked, and therefore the relator is entitled to be discharged; and it is so ordered. We do not deem it necessary to discuss the other questions presented. Relator is discharged."

In an extended note accompanying the report of the case in 2 A. L. R. at page 225, it is said:

"It is well settled that cases of contempt not committed in the immediate view or presence of the court must be brought to the attention of the court by a statement of the facts by persons who witnessed them or have knowledge of them (see 6 R. C. L. Tit. Contempt, p. 531), and the rule seems to be uniformly recognized that this statement must be made under oath, either in the form of an affidavit or by some other sworn statement."

Cases from the United States Court of Appeals and the Supreme Court of 18 states, and from some jurisdiction in Canada, are cited as supporting the rule stated.

There are one or two exceptions to the rule stated in the foregoing authorities, but these exceptions are contrary to the overwhelming weight of authority in this country, and we prefer to place ourselves in accord with the weight of authority.

[17] One reason for the rule is that the affidavit is the only evidence before the trial court that any contempt has been committed, and constitutes the only justification for the issuance of the rule nisi. The fact of the commission of the offense is not within the personal observation of the judicial officer presiding over the court, and it therefore becomes necessary to bring the facts before the court by a formal accusation. This was done at common law by an affidavit. Where this course is pursued, the affidavit at once assumes great importance, as it is not only the foundation for issuing the order to show cause, but also constitutes—and this is its

most important office—the accusation upon which the accused is to be tried for a criminal offense. It is the criminal accusation against the defendant, and is not to be treated merely as evidence, though it has evidentiary value, as we shall presently show. It is in many respects analogous to the complaint made before a magistrate upon which a warrant is issued. State v. Newton, 16 N. D. 151, 112 N. W. 52, 14 Ann. Cas. 1035.

We have some proceedings in this State in which it has been held that an affidavit is jurisdictional. In Porter v. Godfrey et al., 14 Ala. App. 566, 70 So. 204, it was held that:

"The interposition of a claim to property levied on in such cases, by the filing of the statutory affidavit and bond, is jurisdictional, and in the absence of this essential step in the proceeding the court is without jurisdiction to render any judgment whatever; the proceeding is coram non judice and void."

In Ex parte Payne, 130 Ala. 189, 29 So. 622, it appears that, by statute, the Jefferson circuit court might, for good cause, allow judgments by default to be set aside, and it was provided further that no application to set aside the judgment should be entertained by the court unless accompanied by affidavit made by the defendant or his agent or attorney, to the effect that in the belief of affiant the defendant has a lawful defense to the suit. On application for mandamus in the Supreme Court, that court ruled that the affidavit was jurisdictional, and that an order purporting to continue a motion to set aside a judgment by default where the required affidavit was not filed, was void. While these cases have no direct bearing on a contempt proceeding, they are referred to for the purpose of showing that the highest courts of this state recognize that an affidavit in certain cases is jurisdictional.

[18] In People v. Murphy, 1 Daly (N. Y.) 462, the affidavit upon which the contempt proceeding was based was sworn to before a notary public without the limits of the county for which he was appointed, and it was held that the contempt proceeding was void. We therefore hold, in this case, that in order to invoke the jurisdiction of the court below, an affidavit or sworn petition must have been presented to the trial judge before the jurisdiction of the court below could have been invoked. Brown on Jurisdiction, § 118; Carl Lee v. State, 102 Ark. 122, 143 S. W. 909; Grace v. State, 108 Miss. 767, 67 So. 212; 13 C. J. 64, in addition to the authorities cited.

[19] The affidavit annexed to the petition for rule nisi in this case was in words and figures as follows:

"State of Mississippi, Harrison County, City of Gulfport.

"Before me, the undersigned authority in and for said state and county, personally appeared Mrs. Edwin A. Robertson, who being by me first duly sworn, deposes and says that the facts set forth in the foregoing motion are true and correct, according to the best of her knowledge, information and belief.

                              "Mrs. Edwin A. Robertson.
"Sworn to and subscribed before me this the 24th day of September, 1924.
                              "W. R. Barber,
"Notary Public in and for Gulfport, Miss."

It is claimed by the petitioner here that this affidavit is wholly insufficient to support the decree adjudging him in contempt. In Burgess & Co. v. Martin, 111 Ala. 656, 20 So. 506, the Supreme Court, speaking through Mr. Justice McClellan said:

"The allegations of the bill are sworn to by a person named 'as true to the best of his knowledge, information and belief.' This, upon the construction most favorable to complainants, means that the affiant has knowledge that some of the averments of the bill are true, that while he does not know he has been informed and believes that others of the averments are true and that, as to yet other averments, he has neither knowledge nor information, but, without knowing the facts or ever having been informed of their truth, he believes them to be true; and whether any particular allegation of the bill is within one or the other of these three categories is wholly uncertain and unascertainable from this verification. But to construe the affidavit according to the general rule, most unfavorable to the party relying upon it, there is no room for affirmatively saying that it means anything more than the affiant believes the allegations of the bill to be true, though he has neither knowledge nor information of their truth. Pickle's Adm'r v. Ezzell, 27 Ala. 623; Dennis v. Coker, 34 Ala. 611; Globe Iron Roofing & Corrugating Co. v. Thacher, 87 Ala. 458." (Italics supplied.)

In the case above referred to, the affidavit was annexed to a bill praying for a discovery of assets, for the appointment of a receiver, and to subject certain notes, accounts, and choses in action to the payment of complainant's claim. In the part of the opinion quoted from it, appears that the Supreme Court held that the affidavit was wholly insufficient to charge anything.

In the Globe Iron Roofing & Corrugating Co. v. Thacher, 87 Ala. 458, 6 So. 366, the affidavit considered was annexed to a notice of lien. The statute required such notice to be verified by oath of the claimant, or some other person having knowledge of the facts. The form of the affidavit and the ruling as to its sufficiency appears from the following language taken from the opinion:

"The affidavit relied on here is, that 'the foregoing statement is true as to the best of the affiant's knowledge and belief.' This affirmatively shows that the affiant, whether he be considered the claimant or another person, did not have a knowledge of the facts embraced in the statement. He does not swear, that he knows them to be true, or that they are true, without more; but, on the contrary, the construction of the verification most favorable to the lien would be, that some of the facts were

known to be true, and others, though not within the knowledge of the affiant, were believed to be true. This verification is insufficient, and fails to fix the lien on the property of the bridge company. Dorman v. Crozier, 14 Kan. 224; Childs v. Bostwick, 12 Daly (N. Y.) 15; Dennis v. Coker, 34 Ala. 61; Jones on Liens, § 1454."

There are many cases holding that a complaint or information in contempt proceedings is insufficient if made only on information and belief. State v. McGahey, 12 N. D. 535, 97 N. W. 865, 1 Ann. Cas. 650; Swart v. Kimball, 43 Mich. 451, 5 N. W. 635; Thomas v. People, 14 Colo. 254, 23 P. 326, 9 L. R. A. 569; Young v. Cannon, 2 Utah, 560; Batchelder v. Moore, 42 Cal. 412; Ludden v. State, 31 Neb. 429, 48 N. W. 61; Herdman v. State, 54 Neb. 626, 74 N. W. 1097; State ex rel. Harvey v. Newton, 16 N. D. 151, 112 N. W. 52, 14 Ann. Cas. 1035; State ex rel. Harvey v. Davies, 16 N. D. 106, 112 N. W. 60; State ex rel. Jones v. Conn (1900) 37 Or. 596, 62 P. 289; Freeman v. Huron, 8 S. D. 436, 66 N. W. 928; Belangee v. State, 97 Neb. 184, 149 N. W. 415; Ex parte Landry, 65 Tex. Cr. R. 440, 144 S. W. 962; In re Rice (C. C.) 181 F. 217; State v. Gallup, 1 Kan. App. 618, 42 P. 406; Russell v. Wayne, Circuit Judge, 136 Mich. 624, 99 N. W. 864.

In Belangee v. State, 97 Neb. 184, 149 N. W. 415, cited above, Belangee was convicted of contempt of court, consisting of an attempt to bribe a juror. To quote from the opinion of the court:

"It is claimed that the verification of the information is not sufficient, for the reason it is not positively sworn to; the recital in the affidavit being that 'the facts set forth in said information are true, to the best of my knowledge and belief.' "

In discussing the sufficiency of the affidavit, and setting forth the reasons why the affidavit in that form is insufficient, the court said:

"As we have seen, the affidavit, or information, was not sworn to in the positive form. In other words, it did not state 'positive knowledge' of the facts charged in the body of the information. To state that the facts are true to the best of one's 'knowledge and belief' falls far short of the statement that the affiant knows them to be true, which is essential in a charge of contempt. * * * The law seeks to protect the citizen from such prosecutions unless some one makes the charge upon his personal knowledge, when the case is brought before the court, heard and decided by the court, not by a jury, and in a summary way disposed of. The law upon that subject, as declared by the courts, is reasonable—a necessary and just protection to the person charged."

In speaking for the Supreme Court of Michigan, Judge Cooley thus characterized this form of accusation:

"Charges are not verified by an affidavit that somebody is informed and believes they are true. This is mere evasion of the law. The most improbable stories may be believed of any one, and the man most free from any reasonable suspicion of guilt is not safe if he holds his freedom at the mercy of any man 300 miles off who will swear that he has been informed and believes in his guilt. It is easy to tell falsehoods, and those who are least fitted to judge of their credibility are generally the very persons who will believe them because they are told. But to substantiate charges within the meaning of the law evidence is required, and not merely suspicions or information or beliefs." Swart v. Kimball, 43 Mich. 451, 5 N. W. 640.

In Russell v. Wayne, Circuit Judge, 136 Mich. 624, 99 N. W. 864, respecting the office and sufficiency of affidavits in contempt proceedings, the Supreme Court of Michigan said:

"The affidavits, not the petition, conferred jurisdiction upon the court. Without the affidavits the proceeding would have been quashed. In re E. T. Wood, 82 Mich. 82, 45 N. W. 1113. Allegations in the petition not supported by the affidavits will be ignored. When one charges another with the serious crime of interfering with the due course of justice by corrupting or intimidating witnesses, he must have positive evidence to present to the court upon which to base the charge. Rumors will not do. Allegations upon information and belief are not sufficient to put the party charged upon answer."

In State v. Gallup, 1 Kan. App. 618, 42 P. 406, the Court of Appeals of Kansas had before it an affidavit made on information and belief in a contempt proceeding, and respecting the sufficiency of such affidavit the court said:

"What is the charge against him in this affidavit? With what crime is he charged? Admitting every allegation of the affidavit to be true, and it only admits that information has come to him as county attorney, etc., there is no statement that this defendant has violated the injunction. The only positive averment is that information has come to the county attorney that he has violated the injunction, etc. This affidavit cannot be upheld under any of the sections of the statute that provide that the information and belief of affiant is sufficient. The county attorney nowhere in it states that he believes the things of which he has been informed. There is no allegation in the affidavit which is sufficient to satisfy the court that the injunction had been violated, or that would authorize the clerk to issue an order of arrest against the defendant."

In State v. Newton, 16 N. D. 151, 112 N. W. 52, 14 Ann. Cas. 1035, the respondent was required to show why he should not be adjudged guilty of contempt for violating a perpetual injunction restraining him from maintaining a liquor nuisance. The affidavit that was the basis of the proceeding was on information and belief as follows:

"Affiant further says that to his best knowledge, information and belief, the said Geo. W.

Newton has disobeyed, violated and disregarded said injunctional order and mandate of court herein, in this, to wit. * * *"

Here follows a statement of the facts that it is claimed constituted the violation of the order.

The statute of that state governing proceedings for contempt under the Prohibition Law required that the affidavit upon which the judgment for contempt issued should make a prima facie case for the state, and, in discussing the sufficiency of such affidavit, the court said:

"As the application for the arrest is an ex parte proceeding, and as it is in derogation of personal liberty, the least that can be required is that the applicant make an undoubted prima facie case. Upon well settled, general principles, this cannot be done, in the absence of statutory sanction, by an affidavit based upon information and belief, for the very evident reason that such affidavit is not competent evidence. It is merely hearsay. *If the affiant were on the stand, he would not be permitted to testify to any such matter, and he certainly will be equally restricted in an ex parte affidavit,* where he is subject to no cross-examination; and so are the authorities." (Italics supplied.)

[20] Another reason for the rule appears to be that the affidavit must be laid before the court or judge for judicial consideration and action; that the mere filing of the affidavit is not sufficient. 13 C. J. page 64; Kirby v. Chicago R. Co., 51 Colo. 82, 116 P. 150; 13 C. J. 67. In State v. Conn, 37 Or. 596, 62 P. 289, in discussing the necessity of an affidavit in a contempt proceeding, the court said:

"The facts constituting the contempt shall be stated in a positive manner by some one conversant therewith. Indeed, a proper regard for the liberty of the citizen forbids any proceeding by which he may be deprived of his liberty without the information furnished by such an affidavit."

[21] While no statute in this state has been called to our attention, requiring that a petition for the issuance of process to a respondent in an alimony proceeding requiring him to appear and show cause why he should not be adjudged in contempt should make a prima facie case of contempt, we think the doctrine announced by the Supreme Court of the various states in the cases above referred to is sound, and that a citizen should not be required to appear before the court until the applicant makes a prima facie showing by a verified petition that a contempt has probably been committed. Any other rule might subject the unsuccessful party in a contest over alimony to considerable harassment and inconvenience. If the applicant is unable to produce facts before the court tending to show a prima facie case of contempt, then there is no reason or excuse for the issuance of process. If the applicant can produce such proof, no hardship is incurred by requiring the production of such proof, as a condition precedent to the issuance of process. The courts of this state have uniformly required an affidavit that becomes the basis of a criminal proceeding to be sufficient. Monroe v. State, 137 Ala. 88, 34 So. 382; Sims v. State, 137 Ala. 79, 34 So. 400; Butler v. State, 130 Ala. 127, 30 So. 338. Both of the parties in this case rely upon the case of Worthen v. State ex rel. Verner, 189 Ala. 395, 66 So. 686, as supporting their respective contentions.

On behalf of the petitioner it is claimed that the affidavit in a contempt proceeding serves directly as evidence to advise the judicial mind regarding some preliminary issue. On behalf of the complainant in the court below, it is contended that the sole purpose of the affidavit is to set the machinery of the law in motion or to initiate a hearing upon the petition.

The opinion here prevails that the affidavit required in a contempt proceeding is something more than a pledge of good faith in the commencement of a suit; that it does serve and is designed to serve something more than merely putting judicial power in motion.

The first purpose served by the affidavit in contempt proceedings is as evidence to advise the judicial mind which is to consider and decide the preliminary issue, that is to say, whether or not a contempt probably has been committed and whether process shall issue. This is well illustrated by the fact that the mere filing of the affidavit is not sufficient, nor does the presentation thereof to a judge out of his judicial district meet the requirement of law. 13 C. J. p. 64, and authorities, supra.

[22] When an affidavit and bond are filed in a detinue case, for instance, process issues as a matter of course. When the affidavit is filed in a contempt proceeding, the judge must decide whether or not a prima facie case of contempt is made, and if so, what steps, if any, he will take towards punishing it. The affidavit being evidentiary, and its purpose being to advise the judicial mind, the case of Smothers v. Meridian Fertilizer Factory, 137 Ala. 166, 33 So. 898, is conclusive that an affidavit, in substance the same as the affidavit in the case at bar, is not sufficient for the purpose of evidence. In the Smothers' Case, supra:

"The verification of the petition was made by A. M. Willett, one of the attorneys for petitioners, who deposed and said: 'That the facts alleged in the foregoing petition are true and correct according to his best information and belief.'"

In affirming the decree of the lower court dismissing the petition in that case, the court said:

"For there was no proof of the truth of the controverted facts alleged in the petition. It is true, it purports to be verified. But the verification amounts to no verification at all."

[23] Where the affidavit shows a prima facie case of contempt committed it becomes the basis of the issuance of process. The judge before whom it is presented is called upon to decide whether or not that process shall issue. If the affidavit is sufficient, the person cited to appear and show cause must show cause why he should not be punished for contempt, or incur such penalty as the court sees fit to impose. It was not incumbent upon the complainant in the court below to first show that the respondent was able to comply with the decree. He, presumably, knew more about his circumstances and ability in that respect than any one else. The affidavit therefore, under such circumstances, assumes great importance. It was not only evidence of the fact that the decree had not been complied with, but it was the criminal accusation against the accused and upon which he was to be tried and, if found guilty, punished as provided by law. Our attention has not been called to any criminal proceeding in which the accusation is not required to be supported by an oath. Where the prosecution is instituted by complaint, the court has uniformly required the affiant to unequivocally swear that he has probable cause for believing and does believe that certain offense has been committed, and that the party named is guilty thereof. Johnson v. State, 82 Ala. 29, 2 So. 466; Bessemer v. Eidge, 162 Ala. 201, 50 So. 270; Butler v. State, 130 Ala. 127, 30 So. 338; Sims v. State, 137 Ala. 79, 34 So. 400; Shannon v. Simms, 146 Ala. 673, 40 So. 574; Monroe v. State, 137 Ala. 88, 34 So. 382; Streater v. State, 137 Ala. 93, 34 So. 395. Where an indictment is returned, it is returned by the grand jury, sworn according to law, and the indictment is the sworn finding and charge of the body authorized by law to investigate the commission of crime. Under all the authorities above referred to, the verification in this cause is insufficient, and will not support a decree adjudging petitioner in contempt.

It is insisted by the petitioner here that the decree imposing punishment on him for contempt is void because the facts adduced before the trial court could not in any event constitute contempt. In opposition to this, complainant insists that this court cannot review the facts adduced in the court below.

A transcript of the contempt proceeding containing all the pleadings and evidence certified by the register is made a part of the sheriff's return. In the decree adjudging petitioner in contempt, it is, among other things, provided:

"This cause coming up to be heard on the petition of the complainant praying for citation to issue against respondent for contempt of this court, as set forth in the petition filed by complainant; and this matter being called for trial by the court, and the court being of the opinion that the respondent should be required to show cause why he should not be punished for contempt of this court, by failing to comply with the decree of this court rendered in this court on the 15th day of July, 1924; and the respondent being in open court in person and by his attorney, and the evidence in this cause being ordered taken orally in open court and stenographically reported, and the court on hearing the evidence introduced by complainant and respondent, which evidence consists of the evidence taken orally in open court and exhibits therein, transcribed, certified, and filed by the official reporter of this court, and after argument by counsel, does find from the evidence thus taken, transcribed, certified, and filed in this cause which is hereby made a part of this decree as if fully set out herein, that the respondent has willfully refused and declined to comply with the decree heretofore set forth and has willfully refused and declined to pay to complainant the sum of $680 as alimony pending litigation, and the sum of $500 for her solicitor for representing her in this cause, and the further sum of $255 support and maintenance for the months of August, September, and October, 1924."

It therefore appears that the facts which, in the opinion of the learned judge below, showed that petitioner was in contempt are made a part of the decree itself; petitioner says those facts do not constitute contempt. Complainant says we cannot decide that question.

[24] As a general rule, where a court has jurisdiction of the person of the defendant and of the subject-matter out of which the alleged contempt arises, he is not entitled to relief by means of a writ of habeas corpus. 6 R. C. L. 540. The same authority however, states that:

"Under the general rule the court may consider whether the fact set out in the record constitutes contempt, but cannot question the facts themselves as set out, habeas corpus being a collateral attack in which the record is conclusively presumed to be correct." 6 R. C. L. 541.

[25] As a general rule, a reviewing court in contempt proceedings will not consider pure questions of fact. The court, however, may determine whether the alleged contemptuous conduct constitutes a contempt in law. 13 C. J. 104 and authorities cited. Ex parte Earman, 85 Fla. 297, 95 So. 755, 31 A. L. R. 1226; Creasy v. Hall, 243 Mo. 679, 148 S. W. 914, 41 L. R. A. (N. S.) 478; People ex rel. Hackley v. Kelley, 24 N. Y. 74; In re Wood, 82 Mich. 75, 45 N. W. 1113; Wells v. District Court, 126 Iowa, 340, 102 N. W. 106; State v. Leftwich, 41 Minn. 42, 42 N. W. 598; State v. Seaton, 61 Iowa, 563, 16 N. W. 736; Ex parte Thatcher, 2 Gilman (Ill.) 167.

The reason for the rule is stated with great force and clearness by Davidson, P. J., of the Texas Court of Criminal Appeals,

quoted and approved by the Supreme Court of Missouri in Creasy v. Hall, supra, as follows:

"*A judgment which is void is conclusive of nothing, and may be the subject of inquiry in a collateral proceeding.* The recited facts therein are not binding in any way nor for any purpose. Nor can the court make contempt of that which is not contempt. Church, Habeas Corpus, § 152. And every attempt to do so would be in excess of authority or jurisdiction, as much so as if the court had no authority or power to punish for contempt, either in relation to the person or subject-matter. *There must be contempt in order to justify punishment* for that offense. *There are three essential elements necessary to render conviction valid. These are that the court may have jurisdiction over the subject-matter, the person of the defendant, and the authority to render the particular judgment.* If either of these essential elements are lacking, the judgment is fatally defective, and the prisoner held under such judgment may be released on habeas corpus.' Ex parte Degener, 30 Texas App. 576, 7 S. W. 1111; Ex parte Taylor, 34 Tex. Cr. R. 591, 31 S. W. 641; Ex parte Tinsley, 37 Tex. Cr. R. 517, 66 Am. St. Rep. 818, 40 S. W. 306; Ex parte Kearby, 35 Tex. Cr. R. 531, 34 S. W. 635; Id., 35 Tex. Cr. R. 634, 34 S. W. 962; Brown, Jur., §§ 109, 110; Ex parte Lake, 37 Tex. Cr. R. 656, 66 Am. St. Rep. 848, 40 S. W. 727. 'Some of the older authorities regard jurisdiction of the matter and the prisoner sufficient to give the court jurisdiction to pronounce the judgment, which could not be successfully assailed by this writ. The rule now, supported by high and abundant authority and excellent reason, is that court must not only have jurisdiction over the person and the matter, but authority to render the particular judgment. *The judgment is not conclusive upon the question of the authority of the court to render it.* That, as well as any other matter which would render the proceedings void, is open to inquiry.' 7 Am. & Eng. Ency. Law (2d Ed.) 36; People ex rel. Tweed v. Liscomb, 60 N. Y. 559, 19 Am. Rep. 211; People ex rel. Munsell v. Oyer & Terminer Ct., 101 N. Y. 245, 54 Am. Rep. 691, 4 N. E. 259, 6 Am. Cr. R. 163; Ex parte Degener, 30 Tex. App. 566, 17 S. W. 1111; Holman v. Austin, 34 Tex. 668; Ex parte Fisk, 113 U. S. 713, 28 L. Ed. 1117, 5 S. Ct. R. 724. Jurisdiction of the person and subject-matter are not alone conclusive, but the authority of the court to render the particular judgment is the subject of inquiry; and if, upon a review of the whole record, it appears that a judgment unwarranted by law was entered, the party thus placed in contempt will be released under the writ of habeas corpus. Same authorities." (Italics supplied.)

After an exhaustive review of the authorities and a learned discussion, the Missouri Supreme Court concludes its opinion on this question as follows:

"We are firmly of opinion that, as to contempt judgments, such judgments can be attacked in habeas corpus for (1) want of jurisdiction over the person, (2) want of jurisdiction over subject-matter, and (3) want of jurisdiction in the particular case owing to the facts thereof, although the first two requisites are fully met.

"In other words, as said by the Texas court, 'Nor can the court make contempt of that which is not contempt; and every attempt to do so would be in excess of authority or jurisdiction, as much so as if the court had no authority or power to punish for contempt, either in relation to the person or subject-matter. There must be contempt in order to justify punishment for that offense.'

"*Proof that there was in fact, no contempt should avoid the judgment.* We are aware that there are generalizations in the books, which appear opposed to this doctrine, but, if we are to give full vitality to the constitutional writ of habeas corpus, such should be the law. If not, the hearings upon writs of habeas corpus become mere perfunctory proceedings in which we determine a mere paper case, i. e. (1) has the court jurisdiction of the person and subject-matter, and (2) has the court (whether truly or falsely) recited facts enough to constitute contempt? Such a hearing would be far from the hearing so forcefully put by our Brother Lamm in Clark's Case, supra, [208 Mo. 121, 106 S. W. 990, 15 L. R. A. (N. S.) 389] when he said: 'Wherefore, when the great writ goes down—a writ whose origin is beyond the dawn of English history, whose final and triumphant establishment was a land mark in the evolution of civil liberty, making the hearts of its lovers leap for joy—to the prisoner, the doors of jails open, he comes into court with his shackles dropped, and *the cause of his imprisonment, the very marrow of it, is laid bare to the utmost verge and minutiæ permitted by written law.*' The italics are ours. Prison doors are but temporarily opened, if under this great and benign writ we are bound by the mere ipsi dixit of a judge finding for us the facts. The leaping of hearts for joy would only last long enough for the prosecutor to read a false finding of fact in a well written judgment, which finding made contempt wherein there was no contempt. There the 'very marrow' of the cause of the imprisonment might be fully shadowed by a perverse finding of facts, which would prevent its being 'laid bare.' "

We approve what was there so well said, and hold that in this proceeding we may look to the evidence set out in the decree, and determine whether that evidence shows that the conduct of the petitioner here constitutes contempt in law. Authorities, supra.

The record before us shows that, at the time the decree was rendered, the petitioner here owned an interest in several pieces of property which are referred to in the respondent's answer as the Five Point's property, the West End property, Twelfth street property, the East Birmingham property, and Boyles property; all of this property was incumbered by from one to three mortgages that were executed before the petitioner and the complainant were married. One of the mortgages on the Five Points property was foreclosed during the progress of the litigation between the complainant

and the petitioner. On the 15th day of February, 1923, before the complainant and the petitioner. were married, the petitioner executed a conveyance covering his interest in the West End property and the East Birmingham property to his first wife; in the conveyance it was provided as follows:

"It is mutually agreed between the grantor and grantee herein, and as a further consideration for this transfer, that the above described property is conveyed to the grantee as security for an agreed, permanent alimony in the sum of $125 per month to be allowed and awarded to the grantee in a cause of divorce which has been filed by the grantee against the grantor in the chancery court of Jefferson county, Alabama, and it is further agreed that in the event of the death of the grantor during the life of the grantee that the property herein conveyed is to vest in the grantee absolutely and in fee simple forever, and it is further agreed that this instrument is not to be filed for record by the grantee her agent or attorney except in the event of the death of the grantor during the life of the grantee, and that should the grantor further incumber, assign, sell or convey the herein described property such an action may be treated by the grantee as a breach of contract for which the grantor shall be liable to the grantee in damages in an amount equal to value of the property hereinabove described and conveyed; provided however, that upon the happening of an event which endangers or tends to endanger the interest of the grantee herein, the grantee may thereupon record this instrument and it shall operate as a conveyance as of this date."

This instrument was recorded after the decree in this cause was rendered. The Twelfth street property was incumbered by a first mortgage of $1,500, and the Boyles property was incumbered by a first mortgage of about $1,900. When the instrument in writing above referred to was filed for record, the evidence shows that the petitioner was in arrears in the alimony due his first wife, and is still in arrears, and that she intercepted the rent on the property. above referred to in the conveyance, and that the rent thereon was insufficient to pay her alimony. The rent on the Five Points property has also been intercepted. On the 25th day of July, 1924, one of the petitioner's creditors ran a garnishment against him on a note on which it is claimed the sum of $3,259 is due; on the same date another creditor ran a garnishment on a $500 note, and on the 23d day of July petitioner's first wife ran a garnishment on an indebtedness due her of $1,000. These garnishments were served upon the tenants of the petitioner and his employer.

Petitioner had two bank accounts; one in the First National Bank of Birmingham, Ala., referred to as "the agent's account," and on the date the decree was rendered there was a balance to his credit in that account of $568.10. His personal account was with the American Trust & Savings Bank, and, on the date the decree was rendered, he had a balance to his credit of $167.98. The record also shows that the money in the agent's account was money that the petitioner handled for other people whom he represented. Petitioner loaned money for others, collected interest and principal on the loans, which he deposited to his account as agent, paid contractors on bills for his clients as the work progressed, and handled considerable sums of money in that way. He received a commission of from 2 to 5 per cent. for his services, and at different times drew checks on the agent's account for personal matters on the commissions thus earned. It further appears that two creditors of the complainant, on learning of her success in the circuit court, ran attachments against her, and had garnishments served upon the petitioner shortly after the decree was rendered.

Petitioner's bank book was introduced in evidence by the complainant, and it shows without controversy that all of the money in those accounts, in addition to some deposits that were made therein subsequent to the decree, was paid out to petitioner's various principals, and to contractors who were engaged in building houses for parties represented by the petitioner. The checks are itemized and appear in the record.

On the 16th day of July, 1924, petitioner made a deposit in the American Trust & Savings Bank of $200 to cover check drawn on the date the decree was rendered for that amount, for interest due the bank on a loan. The remainder of the money in the personal account of petitioner was paid out between the rendition of the decree and the 23d of the month, $25 of the money going as the balance on alimony to his first .wife for the month of July, $22.80 as life insurance premium, and the remainder for some small personal expenses, all of which is shown by the checks that were itemized and also appear in the record.

In addition to the foregoing, it appears that the petitioner had some property at Biloxi, Miss., which was conveyed to his first wife about the time the original bill in this case was filed. This property was heavily mortgaged, and the evidence shows that the petitioner was unable to meet the interest on the incumbrance or the payments coming due for the furnishings; that the property had never yielded any income, and it was conveyed to his first wife in consideration of her assuming the various indebtedness that the petitioner was responsible for. After holding the property for about a year, she was able to dispose of it at a profit.

Petitioner testifies positively that he was not concerned in any way in the suits that were filed against him, and there is no evidence to the contrary. He also testified that the money in the agency account did not be-

,long to him, and that he will be due some of the parties he represents money, when a final settlement is had, that he is unable to pay. Paragraph 17 of the petitioner's answer, which is verified, shows that the petitioner was unable to pay his current accounts amounting to $353.39 and the evidence is undisputed to the effect that the petitioner has received no income from any source since the first garnishments were run on him about the 23d of July, 1924, except the sum of $42.35 as rent from the Boyles property, which, he says, was expended on his personal living. expenses. It also appears that he is in arrears in the payment of alimony due his first wife.

[26] We have given the record in this case careful consideration, and we are unable to find any fact or circumstance that would support even an inference that the petitioner was in any wise concerned in the suits and garnishments above referred to. The undisputed evidence is that all sources of his income have been stopped by legal process since those matters were put in court, except such commissions as he may earn in handling funds of the people that he represented as agent. There is nothing in the record to show that he earned or received any commission since the rendition of the decree; there is no evidence in the record that the petitioner received any income from any source since the rendition of the decree, except the rent on the Boyles property above referred to, which he appropriated to his living expenses. The income on the Twelfth street property was assigned to the mortgagee to apply on the mortgage debt.

A careful review of the entire record convinces us that the petitioner had no funds with which to comply with the decree at the time it was rendered or at any time before he was adjudged in contempt of the court. We find nothing in this record to support even an inference that the petitioner is concealing his property. or has willfully failed to comply with the decree of the court. The record recites that the petitioner offered to show that he was willing to deed his equity in the Boyles property to the complainant to apply on the decree, subject to the incumbrance on the property, and his counsel there stated that he was willing to deed any other property in which he claimed an equity.

[27, 28] Petitioner testified of an attempt he made at two banks in Birmingham to borrow money since the rendition of the decree against him, and as he expresses it was "turned down." He testifies positively that he has not received any sum of money from any source since the service of the writs of garnishments above referred to, and that he has no funds with which to pay as provided in the decree. Under these circumstances, it was incumbent upon the complainant to show beyond a reasonable doubt that the respondent was financially able to comply with the decree. This the complainant failed to do, and our opinion is that the record affirmatively shows that the respondent was not financially able to comply with the decree at the time it was rendered, or at the time he was adjudged in contempt. It is well settled in this state, in cases of this kind, that:

" 'There must be in the case something *wrong beyond the mere failure to pay money;* and the party, before he can be convicted and punished for it, must have an opportunity to be heard in his own explanation. * * * His inability to pay may be so absolute, as to constitute an effectual excuse.' Again it was said by McCay, J., in Carlton v. Carlton, 44 Ga. 216: 'It must be remembered, also, that the imprisonment by a judge for contempt, is always conditional, and is at his discretion, and may, at any time, by the same .discretion, be discharged. And very clearly, it ought never to be resorted to, except as a penal process, founded on the unwillingness of the party to obey. *The moment it appears there is inability, it would clearly be the duty of the judge, to discharge the party, since it is only the contempt,* the disobedience upon which the power rests.'

"The principle seems to be well formulated in note 9, with citation of many authorities, in the case of Staples v. Staples, reported in 24 L. R. A. 433, in the following language: 'Where the neglect or refusal is not for mere contumacy, *but from the want of means, the result of misfortune not induced by any fraudulent conduct on the* defendant's *part,* the party will be compelled to adopt some other mode than imprisonment, to enforce the decree consistent with the practice of the courts, either by execution or other final process; or by sequestration of the real or personal estate, or by the exercise of such other power as pertain to courts of chancery, and which may be necessary to the attainment of justice.' " Webb v. Webb, 140 Ala. 262, 37 So. 96, 103 Am. St. Rep. 30. (Italics supplied.)

Lest we be misunderstood, we desire to make it clear that we are not passing upon conflicting testimony or determining the weight of the evidence before the trial court. We are merely taking the undisputed evidence that appeared before the trial court, and considering it in the light of well-established rules of law, and, on consideration, our conclusion is that the undisputed evidence in the case was insufficient to show that a contempt in law had been committed.

[29] This is a civil contempt proceeding, the object of which is, not to punish the respondent, but to coerce him to pay the money in satisfaction of the alimony decreed by the court. In a contempt proceeding of this character, the object of which is to coerce the payment of money, the lack of ability to pay on the part of the defendant is always a complete defense against enforcing payment from the defendant by imprisonment. Snook v. Snook, 110 Wash. 104, 188 P. 502, 9 A. L. R. 262.

For the reason stated, we hold that the decree appealed from finds no proper predicate in the facts adduced before the trial court, and under the authorities above cited the decree is void for want of authority to render this particular judgment; and order will therefore be entered discharging the petitioner in the original proceedings instituted in this court, and the judgment of the circuit court of Jefferson county, denying the writ of habeas corpus, will be reversed, and that cause remanded, in order that the petitioner may dismiss his petition or make such other disposition of it in the trial court as he may be advised.

[30] We may remark, respecting the ruling of the trial court in denying the writ, that the statute, section 4312 of the Code of 1923, provides that when application for writ of habeas corpus is made, the judge to whom application is made, must grant the writ without delay unless it appears from the petition itself, or from the documents thereunto annexed, that the person imprisoned or restrained is not entitled to the benefit of the writ.

Bearing in mind the purpose of the writ and the summary character of contempt proceedings, a safe rule for trial courts to follow would be to grant the writ unless it is very clear that the petitioner is not entitled to the writ. Such procedure will relieve the appellate court of considering original petitions in cases of this kind, and allow the matter to be heard in the regular order.

When a sworn petition is presented to a circuit judge alleging illegal restraint of liberty, it is the duty of that judge to inquire into the cause of the restraint, unless the papers on their face show beyond question that the restraint is lawful.

The petitioner is discharged, and the judgment of the court below denying the writ of habeas corpus is reversed, and that cause remanded.